# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-CA-00701-SCT

*BEVERLY MAXEY FRANKS*

*v.*

*LARRY M. FRANKS*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/25/1998 |
| TRIAL JUDGE: | HON. JOHN C. ROSS JR. |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL B. GRATZ, SR. |
| | DEBORAH H. BELL |
| ATTORNEY FOR APPELLEE: | JOHN D. SMALLWOOD |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 12/09/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/30/99 |

## BEFORE SULLIVAN, P.J., SMITH AND MILLS, JJ.

## MILLS, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. Larry M. Franks filed for divorce from his wife, Beverly Maxey Franks, after fourteen years of marriage. The parties agreed to a divorce on the grounds of irreconcilable differences and submitted to the chancellor issues of property division and spousal support. After two days of testimony, the chancellor awarded Beverly the marital residence valued at $60,000, a vehicle valued at $15,500, jewelry valued at $23,000, retirement accounts valued at $45,044.18 and other personal property. The total property award was valued at $144,044.18. The court also awarded her lump sum alimony of $35,000 and ordered Larry to pay certain debts equaling $40,233. The chancellor awarded Larry a vehicle valued at $1,000, personal property, and retirement accounts, investment accounts, stocks and bonds together valued at $1,100,000. The court found Larry's retirement and investment accounts to be non-marital property and, therefore, not subject to equitable distribution. Beverly appeals from that decision assigning as error two issues:

> **I. WHETHER THE CHANCELLOR ERRED AS A MATTER OF LAW IN FINDING THAT INVESTMENT ACCOUNTS IN LARRY FRANKS' NAME ARE NON-MARITAL PROPERTY NOT SUBJECT TO EQUITABLE DISTRIBUTION?**
>
> **II. WHETHER LARRY FRANKS' SEPARATE PROPERTY OF $370,000 LOST ITS SEPARATE CHARACTER WHEN IT WAS COMMINGLED WITH MARITAL**

**PROPERTY?**

¶2. Larry, on cross-appeal, offers one assignment of error:

**I. WHETHER THE CHANCELLOR ERRED IN AWARDING THE MARITAL HOME TO BEVERLY AND WHETHER THE AWARD OF ALIMONY WAS EXCESSIVE?**

## STATEMENT OF FACTS

¶3. Larry and Beverly Franks were married on April 17, 1982. After fourteen years of marriage Larry filed for divorce in the Lee County Chancery Court. The couple subsequently agreed to a divorce on the ground of irreconcilable differences, and the court granted them a divorce on March 25, 1998. At the time of trial both Larry and Beverly were forty-one years of age and in good health. No children were born of the marriage.

¶4. Throughout the marriage Beverly was employed by Hancock Fabrics in Tupelo, Mississippi, at an annual salary of $23,000 at the time of the divorce. Prior to 1991 Larry worked at various jobs with a low annual salary. After 1991 Larry was employed by his father as a farmer at an annual salary of $12,000. The couple lived solely on the income earned from their respective jobs. During the marriage the couple resided at the marital residence located in Tupelo. This residence was purchased by Larry Franks in 1978, and he had paid all but $6,000 of outstanding debt on the mortgage at the time the parties were married. The fair market value of the residence at the time of trial was $60,000. In addition to Beverly's yearly income the trial court determined that she had a separate estate of $45,044.18 consisting of her IRA's and her 401k Plan. Larry had a separate estate of approximately $1,100,000 consisting of his IRA's, investment accounts, stocks and bonds.

¶5. During the course of the marriage, the parties put their employment income into a joint checking account from which everyday bills were paid. At the time of trial Larry had no personal debts. Beverly had credit card debt in excess of $46,000 as of September 1997.

¶6. The most significant properties in dispute are Larry's investment accounts. Larry's parents, Dr. Cecil Franks and Estelle Franks, established investment accounts for Larry and his two siblings when they were small children. The accounts were created as gifts given to Larry and his siblings by Dr. Franks and his wife. Dr. Franks has always and continues to manage all of the accounts. Each account is listed in the name of Larry Franks with one of his other siblings, either David or Carol, named as a joint tenant with rights of survivorship. Dr. and Mrs. Franks have continued to fund the investment accounts with annual gifts of approximately $20,000 deposited directly into the investment accounts. Neither Larry nor Beverly has ever made any monetary contribution to these accounts. Although the income generated by these investment accounts is Larry's property and at his immediate disposal, Larry chose never to receive any dividend or other income from the investment accounts, allowing any such income to be reinvested by Dr. Franks. The taxes on that income were paid directly from the income generated from those investments.

## ANALYSIS

I. Whether the Chancellor erred as a matter of law in finding that investment accounts in Larry Franks' name are non-marital property not subject to equitable distribution?

¶7. In a domestic case, this Court "will not disturb a chancellor's findings unless manifestly wrong, clearly

erroneous, or if the chancellor applied an erroneous legal standard." ***Johnson v. Johnson***, 650 So.2d 1281, 1285 (Miss. 1994).

¶8. We have provided the following basic rules on equitable distribution:

> The division of marital assets is governed by the guidelines delineated in ***Johnson***, ***Ferguson***, and ***Hemsley***. The first step is to identify the character of the parties' assets, both marital and nonmarital, pursuant to ***Hemsley***. ***Johnson***, 650 So.2d at 1287. The chancellor should then, in light of each party's nonmarital property, employ the ***Ferguson*** factors as guidelines and equitably divide the property. ***Id.*** The Court instructed the chancellor to do no more "[i]f there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties...." ***Id.*** However, "[i]f the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered." ***Id.***

[*Knutson v. Knutson*, 704 So.2d 1331, 1333 (Miss. 1997)](.).

¶9. One decision that we find particularly applicable and closely related to the case *sub judice* is ***Carrow v. Carrow***, 642 So.2d 901 (Miss. 1994). In ***Carrow***, this Court considered whether the appreciated value of the husband's separate property Corvette collection was marital property subject to equitable distribution. ***Id.*** Both parties had worked and made good salaries during the marriage. ***Id.*** It was established that throughout the marriage Jean Carrow paid most of the marital household expenses and performed many of the domestic tasks, allowing Jimmie to use his income for investments. ***Id.*** This Court, in considering the matter, first reiterated Mississippi's definition of marital property:

> We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for divorce purposes that the contributions and efforts of the marital partners whether economic, domestic or otherwise are of equal value.

***Carrow***, 642 So.2d at 906 (quoting ***Hemsley v. Hemsley***, 639 So.2d 909, 915 (Miss. 1994)).

¶10. We further stated in ***Carrow***, 642 So.2d at 907:

> Evidence was also presented that some of the Corvettes may have been purchased by Jimmie with money from his father's estate and with inherited money borrowed from his mother. Property originally acquired by inheritance, devise, or descent is usually treated as separate property. ***Fields v. Fields***, 643 S.W.2d 611, 614 (Mo.App.1982). While Jean did do some of the work on these cars, it appears that Jimmie did the vast majority of the work on them. Also, it appears that much of the value of these Corvettes came not solely from the purchase of these cars, but from the work and improvements made upon them after they were purchased. Appreciation of the value of any non-marital asset may be taken into account to arrive at a fair division to the extent that the non-titled spouse had made a contribution toward that appreciation of value. See, e.g., ***Smith v. Smith***, 111 N.C.App. 460, 433 S.E.2d 196, 204 (1993). *Therefore, Jean should not be automatically entitled to a one-half share, but it does appear that she should be entitled to some portion of the couple's appreciated value of the separate property where the appreciation resulted from*

*the joined efforts, skills or funds of both spouses.*

(emphasis added).

¶11. On remand Jean was awarded a substantial part of the Corvette collection. We affirmed this award in a second ***Carrow*** decision. ***Carrow v. Carrow,*** 741 So.2d 200 (Miss. 1999).

¶12. More recently this Court applied the holding in ***Carrow*** to ***Waring v. Waring***, No. 96-CT-00567-SCT, 1999 WL 695926 (Miss. Sept. 9, 1999). In ***Waring***, we upheld a chancellor's decision to decline "to award Shirley an equitable distribution of Richard's assets in the family businesses based on appreciation of the value of the assets during the marriage because Shirley had not shown that her efforts had directly contributed to the appreciation." ***Waring***, 1999 WL 695926 at *2 (Miss. Sept. 9, 1999).

¶13. In ***Waring***, Shirley Waring argued that she contributed to the appreciation of her husband's businesses in two ways: by her actions on behalf of the businesses and by agreeing to the reinvestment of the couple's income into the husband's businesses. Among the actions that Shirley took on behalf of the businesses included taking phone calls, calling attention to problems, renovating office space, developing a marketing theme for one of the stores, and accompanying her husband on business trips. While this Court agreed with the chancellor's assertion that "while these contributions are not large, they should not be totally discounted, " it also agreed with the chancellor's ultimate finding which stated in part:

> There was no testimony elicited from the Defendant's case assigning any economic value to Mrs. Waring's contributions, if any. The burden was on the Defendant to prove by a preponderance of the evidence not merely that the Plaintiff's stock value increased, but also that the increase was due to active appreciation, including, though not limited to, the Defendant's chosen contribution to the marriage, as recognized in the factors enumerated in ***Ferguson***. Absent that proof, this court may only award alimony.

*Id*. at *5.

¶14. This Court agreed that Shirley Waring's contributions to the appreciated value of Richard's businesses did not rise to the level necessary to award equitable distribution of those properties under ***Carrow***. ***Id***. at *5.

¶15. In the case *sub judice*, Beverly argues that the income generated from Larry's investments is marital property subject to equitable distribution. The original investments were given to Larry and either one or more of his siblings as joint tenants with rights of survivorship as gifts before Larry and Beverly were married. However, the gifts continued throughout the marriage, and Beverly contends that the appreciation and income from these gifts are, in fact, marital property. Beverly offers no proof that she contributed more than Larry did to the marital living expenses nor does she offer any proof that she contributed either directly or indirectly to the appreciation or income generated from the investments. Beverly states in her brief that "[i]f Larry had chosen to live on Beverly's salary completely and invest his salary from the farm, the resulting assets would be deemed marital property subject to equitable distribution. The result is no different just because the income was earned from gifted property" Indeed, under such circumstances a chancellor might be correct in concluding that Larry's decision to live completely on Beverly's income while investing his own income would render the appreciation or income from those investments marital property subject to equitable distribution. Under such a scenario, Beverly's acquiescing could indicate action that contributed to

the appreciation of the investments. Therefore, under *Carrow* Beverly would be "entitled to some portion of the couple's appreciated value of the separate property . . . [because] the appreciation resulted from the joined efforts, skills or funds of both spouses." *Carrow,* 642 So.2d at 907. However, these facts do not exist in this case. Larry did not choose to live on Beverly's income completely and invest his own income. In fact, Larry did not invest any of his salary. The only investments made by Larry during the marriage was the income generated by the original investments which were given to him by his father as gifts. In other words, the income from the gifted investments was simply reinvested. Neither Larry nor Beverly used this income. The couple lived solely on their salaries.

¶16. Under the applicable standard of review and absent any proof that Beverly contributed to the appreciation of the non-marital investments, we hold that the chancellor was correct in denying an equitable distribution of Larry's investment accounts.

### II. Whether Larry Franks' separate property of $370,000 lost its separate character when it was commingled with marital property.

¶17. Beverly's next assignment of error contends that Larry's separate property of $370,000 (the amount of money that was gifted to him by his father) lost its separate character when it was commingled with marital property. This Court has held that when separate, non-marital property is commingled with marital property the separate property can lose its characterization as such and become marital property subject to equitable distribution. *See Johnson v. Johnson*, 650 So.2d 1281, 1286 (Miss. 1994); *Heigle v. Heigle*, 654 So.2d 895, 897 (Miss. 1995); *Maslowski v. Maslowski*, 655 So.2d 18, 20 (Miss. 1995). However, in the case *sub judice*, Beverly's assertion of commingling is conditioned on a finding that the income from the investments, the separate property, is, in fact, marital property. Because we find that the income is not marital property Beverly's argument is wholly without merit.

### I. Whether the chancellor erred in awarding the marital home to Beverly and whether the award of alimony was excessive?

¶18. On cross-appeal Larry offers two assignments of error which we combine into one. Larry argues that the chancellor's awarding Beverly the marital residence and $35,000 lump sum alimony as well ordering Larry to pay part of Beverly's debts totaling $40,233 was error. Larry contends that since the chancellor found that the "marital residence was purchased by Larry Franks prior to the marriage, he made all payments on the residence and it was finally paid in full approximately one year after the parties married," the residence should have been classified as non-marital property. Therefore, Larry should have been awarded the residence. The chancellor found that "[d]ue to the differences in the separate estates of both parties, the Court hereby awards Beverly Maxey Franks . . . the marital residence . . . ."

¶19. Larry also argues that the chancellor's award of lump sum alimony as well as ordering him to pay part of Beverly's outstanding debts in the amount of $40,233 was error. Larry argues that ordering him to pay Beverly's debts can only be classified as lump sum alimony, which, added to the other lump sum alimony of $35,000 equals a total alimony award of $75,233. Larry argues that this amount is excessive.

¶20. This Court has stated that while alimony and equitable distribution should be considered together, they are distinct concepts, and when one expands the other must recede. *Ferguson v. Ferguson*, 639 So.2d 921, 929 (Miss. 1994). As the chancellor properly declined to award an equitable distribution of Larry's investment income, it made the following awards to Beverly: the marital home, $35,000 lump sum alimony

and Larry to pay Beverly's $40,233 outstanding debt. After review in light of our decisions in ***Armstrong v. Armstrong***, 618 So.2d 1278 (Miss. 1993), and ***Tilley v. Tilley***, 610 So.2d 348 (Miss. 1992), we find that the awards, in both form and amount, are appropriate.

¶21. For these reasons, we affirm the judgment of the Lee County Chancery Court in all respects.

¶22. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**