IRVING, J.,
 

 for the Court.
 

 ¶ 1. After denying Peggy Thompson Pittman a divorce on the grounds of adultery and habitual cruel and inhuman treatment, the Chancery Court of Hinds County granted Peggy and James E. Pittman a divorce on the ground of irreconcilable differences. Three issues were submitted to the chancellor for decision. James, being-dissatisfied with the chancellor’s resolution of the issues, has perfected this appeal wherein he alleges that the chancellor erred in requiring him to pay Peggy $42,750 for her interest in the marital home, in granting Peggy exclusive possession and control of a Nissan Armada, and in awarding Peggy an interest in several certificates of deposit (CDs) that were purchased prior to the marriage.
 

 ¶ 2. We find that the chancellor exceeded her authority in granting the parties a divorce on the ground of irreconcilable differences. Therefore, we reverse the final decree of divorce, and remand this ease to the chancery court.
 

 FACTS
 

 ¶3. James and Peggy began dating in either 2000, 2001, or 2002.
 
 [1]
 
 At that time, James informed Peggy that he had purchased land and planned to build a home located at 2 Berrywood Cove in Jackson, Mississippi. James and Peggy testified that the construction on the home began in 2000. The record does not inform us as to the date of its completion. However, the parties moved into the Berrywood Cove home in 2004, and at that time, the con-straction was substantially complete. The couple married the following year on June 2, 2005. A little over three months later, on September 16, 2005, the couple separated. Six days later, on September 21, 2005, Peggy filed for divorce on the grounds of habitual cruel and inhuman treatment, adultery, and, alternatively, iri-econcilable differences. James responded on October 7, 2005, by filing an answer and counterclaim. He denied the material allegations of the complaint but agreed that Peggy was entitled to a divorce on the ground of irreconcilable differences.
 

 ¶ 4. On November 21, 2005, the chancellor entered a temporary order granting-exclusive custody and control of the Berry-wood Cove home to James and ordered James to pay Peggy $700 per month, beginning on November 15, 2005. The couple reunited in late January or early February 2006, and on April 21, 2006, signed a marital agreement that indicated an effective date of January 31, 2006. Even though the parties reunited, Peggy did not withdraw her complaint for divorce. However, no additional documents were filed in the divorce proceedings until February 27, 2007. At that time, Peggy filed a petition seeking a contempt citation against James for violating the November 21, 2005 tem
 
 *397
 
 porary order. Specifically, Peggy alleged that James had failed to pay the $700 per month to her and had disobeyed the chancellor’s order in regard to the restriction on the use of the CDs.
 
 [2]
 
 Peggy also requested: (1) that she be awarded the exclusive use and possession of the Nissan Armada until the final hearing, (2) that James’s monthly payment of $700 be increased, and (3) that the chancellor award her reasonable attorney’s fees.
 

 ¶ 5. On March 21, 2007, the chancellor entered an order in response to Peggy’s petition for contempt and temporary relief wherein she granted Peggy the exclusive possession and control of the Nissan Armada and ordered that Peggy be responsible for the payments on the Nissan Armada. The chancellor also awarded James the exclusive use and possession of the Berrywood Cove home and ordered Peggy to move out of the Berrywood Cove home by April 1, 2007. The chancellor further ordered James to pay Peggy $700 per month on the first day of each month beginning on April 1, 2007. The chancellor made no determination with respect whether James was in contempt of the November 21, 2005 order.
 

 ¶ 6. The case was tried on June 25, 2007, and July 27, 2007. At the close of the evidence, the chancellor ruled from the bench that Peggy had failed to carry her burden of proof on both of the grounds on which she had sought a divorce. Therefore, the chancellor denied the divorce.
 
 [3]
 
 However, the chancellor advised the parties that if they could agree, she could grant them a divorce on the ground of irreconcilable differences, utilizing the record that was made during the contested phase, thereby dispensing with the need for the parties to have to again appear and give evidence. The parties did not indicate on the record whether they would pursue a divorce on the ground of irreconcilable differences. However, on August 2, 2007, the couple filed a consent to divorce on the ground of irreconcilable differences. At that time, nor anytime thereafter did they seek leave of court to withdraw their contest or denial as required by Mississippi Code Annotated section 93-5-2(5) (Supp.2008).
 

 ¶ 7. On November 1, 2007, the chancellor entered an order and opinion wherein she determined that the parties were entitled to a divorce on the ground of irreconcilable differences. The chancellor also resolved the issues submitted to her for resolution. Specifically, the chancellor determined that the Berrywood Cove home was marital property with a market value of $315,000. After deducting $30,000, which represents the amount paid by James for the purchase price of the lot, the chancellor determined that the home was worth $285,000 and awarded the same to James. However, the chancellor ordered James to pay Peggy fifteen percent, or $42,750, as Peggy’s equitable share of the home. With respect to the Nissan Armada, the chancellor determined that the fair-market value of it was $45,000, that the loan balance was $18,000, and that the amount of equity was $17,000.
 
 [4]
 
 The chancellor awarded the Nissan Armada to Peggy and
 
 *398
 
 ordered her to pay James seventy percent or $11,900 as his share of the equity in the vehicle. Finally, as to the CDs, the chancellor determined that each of the payees of the various CDs that were opened prior to the marriage, but after Peggy and James moved in together, should be divided equally between the payees.
 
 [5]
 
 This division resulted in Peggy receiving a total pro rata share of $9,350.
 

 ¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 9. This Court will only reverse a chancellor’s division and distribution of a marital estate when it is not supported by substantial credible evidence.
 
 Owen v. Owen,
 
 928 So.2d 156, 160(¶ 10) (Miss.2006) (citing
 
 Carrow v. Carrow,
 
 642 So.2d 901, 904 (Miss.1994)). “The ‘chancery court has authority, where equity demands, to order a fair division of property accumulated through the joint contributions and efforts of the parties.’ ”
 
 Id.
 
 (quoting
 
 Savelle v. Savelle,
 
 650 So.2d 476, 479 (Miss.1995)). “[An appellate court] will not substitute its judgment for that of the chancellor ‘even if [it] disagrees with the [chancellor] on the finding of fact and might [arrive] at a different conclusion.’ ”
 
 Id.
 
 (quoting
 
 Owen v. Owen,
 
 798 So.2d 394, 397-98(¶ 10) (Miss. 2001)). Further, an appellate court is obligated to uphold a chancellor’s findings “unless those findings are clearly erroneous or an erroneous legal standard was applied.”
 
 Id.
 
 at (¶ 11) (citing
 
 Carrow,
 
 642 So.2d at 904).
 

 ¶ 10. As we stated in the beginning of this opinion, James argues that the chancellor erred in requiring him to pay Peggy $42,750 for her interest in the marital home, in granting Peggy exclusive possession and control of the Nissan Armada, and in awarding Peggy an interest in several CDs that were purchased prior to the marriage.
 

 ¶ 11. In
 
 Massingill v. Massingill,
 
 594 So.2d 1173, 1175 (Miss.1992), our Mississippi Supreme Court said:
 

 Divorce in Mississippi is a creature of statute. Original jurisdiction to grant divorces in this State was vested in the [Legislature and the subsequent jurisdiction of the chancery court over divorce is derived from the assignment of that authority to the chancery court by the [LJegislature. The chancellor, therefore, may exercise only such authority in the granting of a divorce as he has been given by the [Legislature.
 

 ¶ 12. As stated in the facts, this case was tried as a contested divorce. It was after the chancellor had denied Peggy a divorce on her contested grounds that the parties agreed to a divorce on the ground of irreconcilable differences. At that point, it was incumbent upon the parties to take certain procedural steps in order to empower the chancellor with the authority to grant the divorce on the ground of irreconcilable differences. The parties were required to execute and file a written consent authorizing the chancellor to grant the divorce on the ground of irreconcilable differences and to decide any issues that the parties could not resolve themselves. Miss.Code Ann. § 93-5-2(3) (Supp.2008). Since there had been a contest and denial with respect to Peggy’s fault grounds for divorce, the parties were required to seek leave of the court to withdraw and, in fact, withdraw their contest or denial and,
 
 *399
 
 thereafter, file the order of the court granting the permission to withdraw.
 

 ¶ 13. The record does not reveal that each of the procedural steps outlined above were taken by the parties. They did file the requisite consent. However, the record is devoid of any order permitting the parties to withdraw their contest or denial. Nor is there any record of the contest or denial being withdrawn. We are fully aware that James, in his answer and counterclaim, agreed that Peggy was entitled to a divorce on the ground of irreconcilable differences while denying that she was entitled to a divorce on either of the fault grounds alleged by her. That fact notwithstanding, James’s answer and counterclaim amounted to a contest or denial until withdrawn or cancelled by leave and order of the chancery court.
 
 See Massingill,
 
 594 So.2d at 1178 (holding that, by virtue of Mississippi Code Annotated section 93-5-2(5), the filing of a cross-complaint or counterclaim amounts to a contest until withdrawn or canceled by leave and order of the chancery court).
 

 ¶ 14. It'is the intent of the Legislature, as expressed in section 93-5-2, “that there be no [pending] contest or denial of
 
 any
 
 ground for divorce” if the parties are to be divorced on the ground of irreconcilable differences.
 
 Id.
 
 at 1178 (citing
 
 Alexander v. Alexander,
 
 493 So.2d 978, 980 (Miss. 1986)).
 

 1115. We, therefore, hold that the chancellor manifestly erred in granting the divorce on the ground of irreconcilable differences, as the statutory authority for her doing so was not met by the parties. In reaching this conclusion, we are well aware that neither party has raised the issue of the chancellor’s authority to grant the divorce on the ground of irreconcilable differences. However, “[i]t is the primary duty of [an appellate court], on its own motion, to determine its jurisdiction.”
 
 Byrd v. Sinclair Oil & Refining Co.,
 
 240 So.2d 623, 623 (Miss.1970)
 
 (citing Roach v. Black Creek Drainage Dist.,
 
 206 Miss. 794, 795, 41 So.2d 5, 5 (1949)). “It is equally well settled that a judgment rendered by a court having no jurisdiction of the subject matter is void, not merely voidable, and may be attacked directly or collaterally, anywhere, and at any time. Such a judgment is a usurpation of power and is an absolute nullity.”
 
 Stevens v. Stevens,
 
 346 So.2d 909, 912 (Miss.1977) (quoting
 
 Duvall v. Duvall,
 
 224 Miss. 546, 552, 80 So.2d 752, 754 (1955)).
 

 ¶ 16. Since we have found that no divorce should have been granted, it necessarily follows that no property division should have been made. Additionally, because the chancellor exceeded her statutory authority in granting the divorce on the ground of irreconcilable differences, we follow our supreme court’s lead in
 
 Massin-gill
 
 and “wipe the slate clean and put the parties back where they were prior to trial.”
 
 Massingill,
 
 594 So.2d at 1179.
 

 ¶ 17. In light of our disposition of this case, we do not reach the issues raised by James. We do note, however, that if this case is retried on remand under the existing cause number, it may be appropriate for the chancellor to take into consideration the marital agreement that the parties executed during the pendency of the divorce proceedings and introduced as an exhibit during the trial. Also, the chancellor may want to reconsider the decision to classify as marital property all of the CDs that Peggy and James opened after they moved in together but prior to their marriage. We make these comments, as these issues may very well surface again in any retrial.
 

 ¶ 18. Based on the foregoing reasons, we reverse and remand this case to the
 
 *400
 
 chancery court for further proceedings consistent with this opinion.
 

 ¶ 19. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPEL-LEE AND ONE-HALF TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . James testified that he and Peggy started dating in 2001 or 2002, while Peggy testified that they began dating in 2000. The chancellor found that they began their relationship in 2000.
 

 [2]
 

 . In her petition, Peggy argues that James used money from the CDs for a down payment on the Nissan Armada in violation of the chancellor’s order.
 

 [3]
 

 . A perusal of the record does not show the entrance of an order denying the divorce on the ground of habitual cruel and inhuman treatment or adultery.
 

 [4]
 

 .The chancellor inadvertently stated that the equity in the vehicle was $17,000. We note that $45,000 minus $18,000 equals $27,000, not $17,000. We further note that the chancellor carried forward her mistake by calculating James's share of the equity using the $17,000, not $27,000 figure.
 

 [5]
 

 . Either James’s son, brother, sister, of some other individual is listed, along with James and Peggy, as the payees of the CDs.