IRVING, J.,
 

 for the Court.
 

 ¶ 1. Prentiss Edsel Sellers (Eddie) appeals from a final judgment of the Nesho-ba County Chancery Court granting a divorce to him and Nancy Bridges Sellers on the ground of irreconcilable differences. Eddie asserts that the chancellor erred in ordering him to pay alimony and child support.
 
 [1]
 

 ¶2. We find merit to the issues raised by Eddie; therefore, we affirm in part, reverse and render in part, and remand for further consideration.
 

 FACTS
 

 ¶ 3. On October 14, 2005, Nancy filed a complaint for divorce in the Neshoba County Chancery Court on the ground of irreconcilable differences, habitual cruel and inhuman treatment, and constructive desertion. Nancy also sought primary custody of their minor children, Prentiss Austin and Isaac Lucas Sellers.
 

 ¶ 4. On October 26, 2005, Eddie filed an answer to Nancy’s complaint, and on October 31, 2005, he filed a counterclaim for divorce. Thereafter, on February 21, 2006, the parties reached a temporary agreement whereby they agreed to the following: (1) that Eddie would have temporary custody of Austin, and Nancy would have temporary custody of Isaac; (2) that Eddie would continue to provide medical insurance for both children; (3) that Eddie would have exclusive use and occupancy of the marital residence; (4) that Eddie would have reasonable visitation with Isaac, and Nancy would have reasonable visitation with Austin; and (5) that Eddie and Nancy would enter into a consent for divorce on the ground of irreconcilable differences, and the fault-based grounds would be dismissed with prejudice. The matter was set for trial on May 11-12, 2006.
 

 ¶ 5. On May 4, 2006, the chancellor held a status conference, and on June 9, 2006,
 
 [2]
 
 entered an order providing, inter alia, “that the parties shall submit a motion to the Court to withdraw all pleadings inconsistent with obtaining a divorce on the ground of irreconcilable differences as well as an order granting same to the Court on or before May 11, 2006.” The chancellor also ordered the parties to “submit to the Court on or before May 11, 2006, their consent for divorce on the ground of irreconcilable differences and [identify] specifically those issues contested for the Court’s consideration, along with an itemization of property owned by either of the parties and their values.”
 

 ¶ 6. On June 8, 2006, the parties filed a consent for divorce in which they set forth the matters upon which they had agreed as well as those matters upon which they
 
 *301
 
 were unable to reach an agreement but were willing to have the chancellor decide. The certification of the notary public indicates that Nancy signed the consent on May 9, 2006, and that Eddie signed it on May 11, 2006.
 

 ¶ 7. We have perused the record and have been unable to find any motion seeking leave of court to withdraw Eddie’s contest and denial. We also have been unable to find any order granting such leave. Even though the parties failed to comply with the requirements of Mississippi Code Annotated section 93-5-2(5) (Supp.2008) and with the directives of the chancellor’s June 9th order, the chancellor granted them a divorce on the ground of irreconcilable differences.
 

 ¶ 8. Although the trial of the matter was initially set for trial on May 11-12, 2006, the case did not proceed to trial until August 7, 2006. At the conclusion of the trial, the chancellor valued the marital estate at $304,230 and, of that amount, awarded Nancy $142,990. He awarded the remainder, or $161,240, to Eddie. These awards included an equal division of the $100,000 equity in the marital home, resulting in each party receiving $50,000. In determining whether alimony was appropriate, the chancellor conducted an
 
 Armstrong
 
 analysis and ordered Eddie to pay $62,600 in lump-sum alimony.
 
 [3]
 
 The chancellor then ordered that $50,000 of the award be paid from Eddie’s portion of the equity in the marital home and that the remaining $12,600 be paid in monthly installments of $700.
 

 ¶ 9. As stated, the chancellor awarded to each of the parties custody of one of their minor children. This fact notwithstanding, the chancellor also ordered Eddie to pay Nancy $490 as child support for the child to whom she was awarded custody. This amount represented fourteen percent of an adjusted gross income of $3,500, which the chancellor determined accurately reflected Eddie’s monthly adjusted gross income, notwithstanding that Eddie’s 8.05 financial disclosure statement
 
 [4]
 
 reflected a different amount.
 

 ¶ 10. Additional facts, as appropriate, will be addressed during our discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 11. It is well settled that an appellate court’s “review in domestic relations matters is limited by [the] familiar substantial evidence/manifest error rule.”
 
 Parker v. Parker,
 
 641 So.2d 1133, 1137 (Miss.1994) (citing
 
 Stevison v. Woods,
 
 560 So.2d 176, 180 (Miss.1990)). “This Court will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 Id.
 
 (quoting
 
 Bell v. Parker,
 
 563 So.2d 594, 596-97 (Miss.1990)).
 

 ¶ 12. Before discussing the issues, we feel compelled to address a matter highlighted by the procedural facts of this case. As noted, this case started out as a contested divorce proceeding. Sometime during the course of the proceedings, the parties decided to pursue their divorce on the ground of irreconcilable differences even though they could not resolve all of the issues involved. They notified the chancellor of their desire, and he instructed them to file certain pleadings to accomplish their
 
 *302
 
 objective. Obtaining an order allowing withdrawal of “all pleadings inconsistent with obtaining a divorce on the ground of irreconcilable differences” was one of the things that they were instructed to do. As previously noted, the parties failed to do so. However, Eddie has not raised this as an issue on appeal. Nevertheless, we address this matter briefly since our holding today is at odds with our holding in
 
 Pittman v. Pittman,
 
 4 So.3d 395 (Miss.Ct.App.2009).
 
 [5]
 

 ¶ 13. On April 23, 2009, approximately six weeks after we decided
 
 Pittman,
 
 the Mississippi Supreme Court decided
 
 Irby v. Estate of Irby,
 
 7 So.3d 223 (Miss.2009) in which it held that subsection (5) of Mississippi Code Annotated section 93-5-2 (Supp.2008) must be read in conjunction with subsection (3) and that when the requirements of subsection (3) have been complied with, “the safeguards provided by subsection (5)[are] no longer necessary.”
 
 Irby,
 
 7 So.3d at (¶ 54). The supreme court arrived at this construction of subsection (5) after discussing the history of section 93-5-2. However, as demonstrated by the quoted passages below, the court erroneously stated that the requirement — “that a contest or denial be withdrawn or canceled, by leave and order of the court, by the party who filed the contest” — had been in the statute since its promulgation.
 
 [6]
 

 Id.
 

 ¶ 14. Section 93-5-2 in its original form as enacted by the Legislature, with an effective date of July 1, 1976, provided as follows:
 

 Divorce from the bonds of matrimony may be granted on the ground of irreconcilable differences, but only upon the joint bill of the husband and wife or a bill of complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process. No divorce shall be granted on the ground of irreconcilable differences unless the court shall affirmatively find in its decree that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties. The agreement may be incorporated in the decree, and such decree may be modified as other decrees for divorce. Bills for divorce on the ground of irreconcilable differences must have been on file for sixty (60) days before being heard. A joint bill of husband and wife or a bill of complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process, for divorce solely on the ground of irreconcilable differences, may be taken as confessed and a final decree entered thereon, pro confesso, as in other cases and without proof or testimony in term time or vacation, the provisions of section 93-5-17 to the contrary notwithstanding.
 
 No divorce shall be granted on the ground of irreconcilable differences where there has been a contest or denial.
 
 Irreconcilable differences may be asserted as a sole ground for divorce or as an alternate ground
 
 for
 
 divorce with any other cause for divorce set out in section 93-5-1.
 

 1976 Miss. Laws 704-05 (emphasis added).
 

 ¶ 15. In 1978, the Legislature amended section 93-5-2 to read as follows:
 

 
 *303
 
 Divorce from the bonds of matrimony may be granted on the ground of irreconcilable differences, but only upon the joint bill of the husband and wife or a bill of complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process. No divorce shall be granted on the ground of irreconcilable differences unless the court shall find in its decree that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties. The agreement may be incorporated in the decree, and such decree may be modified as other decrees for divorce. Bills for divorce on the ground of irreconcilable differences must have been on file for sixty (60) days before being heard. A joint bill of husband and wife or a bill of complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process, for divorce solely on the ground of irreconcilable differences, shall be taken as confessed and a final decree entered thereon, pro confesso, as in other cases and without proof or testimony in term time or vacation, the provisions of section 93-5-17 to the contrary notwithstanding. No divorce shall be granted on the ground of irreconcilable differences where there has been a contest or denial;
 
 provided, however, that a divorce may be granted on the grounds of iireconcilable differences where there has been a contest or denial, if the contest or denial has been withdrawn or cancelled by the party filing same by leave and order of the court.
 
 Irreconcilable differences may be asserted as a sole ground for divorce or as an alternate ground for divorce with any other cause for divorce set out in section 93-5-1.
 

 1978 Miss. Laws 570-71 (emphasis added).
 

 ¶ 16. In 1990, the Legislature again amended section 93-5-2, and the 1990 amended version of the section read as follows:
 

 (1) Divorce from the bonds of matrimony may be granted on the ground of irreconcilable differences, but only upon the joint complaint of the husband and wife or a complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver or process.
 

 (2) If the parties provide by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties and the court finds that such provisions are adequate and sufficient, the agreement may be incorporated in the judgment, and such judgment may be modified as other judgments for divorce.
 

 (3) If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that the parties understand that the decision of the court shall be a binding and lawful judgment. Such consent may not be withdrawn by a party without leave of the court after the court has commenced any proceeding, including
 
 *304
 
 the hearing of any motion or other matter pertaining thereto. The failure or refusal of either party to agree as to adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between the parties, or any portion of such issues, or the failure or refusal of any party to consent to permit the court to decide such issues, shall not be used as evidence, or in any manner, against such party. No divorce shall be granted pursuant to this subsection until all matters involving custody and maintenance of any child of that marriage and property rights between the parties raised by the pleadings have been either adjudicated by the court or agreed upon by the parties and found to be adequate and sufficient by the court and included in the judgment of divorce. Appeals from any orders and judgments rendered pursuant to this subsection may be had as in other cases in chancery court only insofar as such orders and judgments relate to issues that the parties consented to have decided by the court.
 

 (4)Complaints for divorce on the ground of irreconcilable differences must have been on file for sixty (60) days before being heard. Except as otherwise provided in subsection (3) of this section, a joint complaint of husband and wife or a complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process, for divorce solely on the ground of irreconcilable differences, shall be taken as proved and a final judgment entered thereon, as in other cases and without proof or testimony in termtime or vacation, the provisions of Section 93-5-17 to the contrary notwithstanding.
 

 (5) Except as otherwise provided in subsection (3) of this section, no divorce shall be granted on the ground of irreconcilable differences where there has been a contest or denial;
 
 provided, however, that a divorce may be granted on the grounds of irreconcilable differences where there has been a contest or denial, if the contest or denial has been withdrawn or cancelled by the party ñling same by leave and order of the court.
 

 (6) Irreconcilable differences may be asserted as a sole ground for divorce or as an alternate ground for divorce with any other cause for divorce set out in Section 93-5-1.
 

 1990 Miss. Laws 908-09 (emphasis added).
 
 [7]
 

 ¶ 17. It seems rather clear that the language following the exception clause of subsection (5) of section 93-5-2 addresses situations where parties begin their divorce proceedings pursuing a fault-based divorce but later change their minds and decide to obtain the divorce, after an answer and denial to the fault-based complaint has been filed, on the ground of irreconcilable differences. As indicated by the 1976 version of the statute, when irreconcilable differences divorce first became a ground for divorce in this state, the parties had no such option. In other words, if the parties started out pursuing a divorce on a fault ground, they either had to pursue it to the end on a fault basis or voluntarily dismiss their fault-based divorce and start over with an irreconcilable-differences-based divorce if they could agree to have the divorce granted on this basis and agree
 
 *305
 
 on all the other matters set forth in the statute.
 

 ¶ 18. As can be discerned from a plain reading of the 1978 version of the statute, the 1978 amendment eliminated the necessity for the parties to dismiss their fault-based complaint and start over if, after first pursuing a divorce on a fault basis, they later agreed to a divorce on the ground of irreconcilable differences. All that was required was a withdrawal and dismissal of their contest or denial pursuant to leave and order of the court. Of course, an agreement that the divorce be granted on the basis of irreconcilable differences and an agreement regarding all matters set forth in the statute was still required.
 

 ¶ 19. With the 1990 amendment, the Legislature made it possible, as the language of the statute demonstrates, for parties to obtain a divorce on the ground of irreconcilable differences without first having to resolve all issues relating to property rights, alimony, child support, and child custody. After the 1990 amendment, three avenues were available to parties seeking a divorce on the ground of irreconcilable differences: (1) they could file a joint complaint seeking a divorce on the ground of irreconcilable differences and attach to the complaint an agreement that made adequate and sufficient provision for the custody and maintenance of any children of the marriage and for settlement of any property rights between the parties; (2) they could file a joint complaint seeking a divorce on the ground of irreconcilable differences and attach to the complaint an agreement stating (a) the issues that they were able to agree on, (b) the issues that they were unable to agree on, and (c) that they were submitting to the court for resolution the issues that they were unable to agree on with the understanding that they would be bound by the court’s resolution of those issues; or (3) they could initiate a fault-based divorce and convert to a no-fault or irreconcilable-differences-based divorce during the course of the proceedings.
 

 ¶20. Prior to the 1990 amendment, it was clear that before a chancellor could grant a divorce on the ground of irreconcilable differences “there [could] be no [outstanding] contest or denial of any ground for divorce.”
 
 Massingill v. Massingill,
 
 594 So.2d 1173, 1178 (Miss.1992); see
 
 also Alexander v. Alexander,
 
 493 So.2d 978, 980 (Miss.1986) (interpreting the requirements of section 93-5-2). This was true even if the parties agreed in writing to the granting of the divorce on the ground of irreconcilable differences and, by written agreement, settled any property rights between them and made adequate and sufficient provisions for the custody and maintenance of any children of the marriage.
 
 Alexander,
 
 493 So.2d at 980. Thus, it necessarily follows that if the parties had initiated a fault-based divorce, they were required to "withdraw, prior to being granted a divorce on the basis of irreconcilable differences, any contest or denial that they had filed. Neither
 
 Massingill
 
 nor
 
 Alexander
 
 explained the procedure for the withdrawal or cancellation of the contest or denial if it were to occur in a manner different than the procedure which is stated in the statute, that is, by leave and order of the court.
 

 ¶ 21. As stated, the
 
 Irby
 
 court held that once the parties have met the procedural requirements of subsection (3) of section 93-5-2, the procedural safeguard of subsection (5) — which the court identified as the "withdrawal or cancellation of the contest or denial by leave of court — was no longer necessary. Apparently, the court reasoned, without specifically saying so, that the filing of the consent that is detailed in subsection (3) operates as a can
 
 *306
 
 cellation or withdrawal of the contest or denial referenced in subsection (5). While we are obligated to follow the Mississippi Supreme Court’s interpretation of the statutory law, it seems that interpreting subsection (5) in this manner overlooks the fact that it was the Legislature that enacted subsection (3) without repealing subsection (5), a subsection which contains language that had been in effect and given meaning since 1978. Surely, the Legislature was aware of the provisions of subsection (5) when it enacted subsection (3). Therefore, it is presumed to have considered the
 
 effect,
 
 if any, that the enactment of subsection (3) would have on the already-existing subsection (5). To suggest that the Legislature intended that subsection (3) serve to abrogate the provision of subsection (5) which follows the exception clause is to assign a nonsensical approach to legislative enactments by the Legislature.
 

 ¶ 22. Since prior to the addition of subsection (3) in 1990, parties who initiated a fault-based divorce had to withdraw or cancel their contest or denial by leave and order of the court before being able to obtain a divorce on the ground of irreconcilable differences, it seems quite logical that the Legislature, by leaving subsection (5) in the irreconcilable-differences statute, intended that that process should continue. It also seems logical that since the Legislature, by enacting subsection (3), created another avenue by which parties could obtain an irreconcilable-differences divorce, it was necessary to except from the strictures of subsection (5) the newly created avenue for obtaining a divorce on the basis of irreconcilable differences — thus the rationale or need for the exception clause at the beginning of subsection (5). But as we have already stated, we are duty bound to follow the law as laid down by our supreme court. Therefore, we return to the issues before us, as we must find that the chancery court possessed the requisite jurisdiction to grant the divox*ce on the ground of irreconcilable differences even though the parties never canceled or withdrew their contest or denial by leave and order of the court.
 

 1. The Child Support Award
 

 ¶ 23. The crux of Eddie’s argument that the chancellor erred in ordering him to pay child support centers around the chancellor’s revision of figures related to income and expenses listed on his 8.05 disclosure statement. We briefly set forth the figures listed by Eddie and the adjustments made by the chancellor.
 

 ¶ 24. On his 8.05 disclosure statement, Eddie listed monthly gross income of $4,479 and adjusted gross income of $3,115.06. The gross income figure includes salary and wages from his employment with the Choctaw Health Center and $200 per month from his karate business. In arriving at his adjusted gross income, Eddie subtracted permissible deductions for child support purposes. However, he also deducted $355.19 for a voluntary 401k account. Finding this an impermissible deduction, the chancellor added the $355.19 back to Eddie’s adjusted gross income, bringing the total to $3,470.25. The chancellor then concluded that Eddie should have shown an adjusted gross income of $3,500 instead of $3,115.06 (apparently the chancellor rounded $3,470.25 up to $3,500).
 

 ¶ 25. Next, the chancellor reviewed Eddie’s 2004 tax return, which shows that Eddie experienced a net loss of $516 from his karate business. The chancellor also noted that Eddie’s tax return shows that he deducted $1,328 for depreciation and $3,376 for car and truck expenses associated with his karate business. The chancellor disallowed the deduction for deprecia
 
 *307
 
 tion and reduced the figure for car and truck expenses by half, finding that only $1,688 of the $3,376 had been expended in connection with the karate business. The chancellor then determined that Eddie profited $3,016 from his karate business in 2004. He arrived at this figure by adding the disallowed depreciation in the amount of $1,328 to the reduced car and truck expenses in the amount of $1,688. The chancellor then divided the $3,016 figure by twelve, arriving at a figure of $251.33 which the chancellor rounded down to $250. The chancellor added the $200, which Eddie indicated on his 8.05 financial disclosure statement that he had received monthly from the karate business, to the $250, which the chancellor determined was the correct monthly amount from the karate business, for a total of $450. Finally, the chancellor added the $450 to the $3,500 figure that he determined should have been shown by Eddie on his 8.05 financial disclosure statement, if he had not improperly deducted the $355.19 to the 401k account. Consequently, the chancellor determined that Eddie’s monthly adjusted gross income was $3,950.
 

 ¶ 26. We should also point out another matter that appeared to trouble the chancellor and may have overshadowed the way he looked at all income-related claims made by Eddie. Apparently, on an Internet dating web site, Eddie had listed his income at between $50,000 and $75,000. After learning of the web site listing, the chancellor did not alter the amount of gross income that Eddie had listed on his 8.05 financial disclosure statement; however, it is clear from a reading of the record that the chancellor suspected that Eddie may have been understating his income. At the very least, it seems that Eddie’s credibility suffered a substantial blow from the outset because of the website listing. Nevertheless, for purposes of arriving at Eddie’s adjusted gross income, the chancellor utilized Eddie’s 8.05 financial disclosure statement as a starting point. Therefore, we will not discuss this matter any further.
 

 ¶ 27. As stated, the chancellor found that Eddie’s adjusted gross income was $3,950. We find that the chancellor manifestly erred in his computation, as $200 of the $450 that the chancellor added to the adjusted gross income figure claimed by Eddie had already been included by Eddie. Thus, the chancellor actually charged Eddie with receiving $650 in monthly income from the karate business instead of $450. Accepting all of the chancellor’s other calculations, we find that Eddie’s adjusted gross income is only $3,720. Had the chancellor simply subtracted the $200 from the $3,115.06 that Eddie claimed as his adjusted gross income and added the $355.19 that Eddie claimed in voluntary 401k payments plus the $450 that the chancellor concluded represents Eddie’s disposable income from the karate business, he would have arrived at the figure of $3,720.25, the amount that we have determined is Eddie’s accurate monthly adjusted gross income.
 

 ¶ 28. We also note that even though the chancellor included disposable income from Eddie’s karate business in his calculation of Eddie’s monthly adjusted gross income, he gave the land, including the building that Eddie used to conduct his karate business, to Naney. We further note that the record clearly reflects that Eddie’s karate business has experienced a significant downturn over the last few years. Eddie testified that he had less than five students at the time of the hearing. This number was significantly less than the number he had had in previous years. Moreover, as already noted, the chancellor awarded the building that Eddie used to operate his karate business to Nancy. Thus, if Eddie
 
 *308
 
 wishes to continue operating his karate business he will have to incur other expenses in order to reestablish his business at another location. According to Eddie, it would take at least $60,000 to rebuild the karate school. Apparently, while considering the income potential of the karate business and its effect on Eddie’s adjusted income in the future, the chancellor did not take into consideration the increase in overhead expenses, as well as the decline in participants at the karate school. We now turn to the chancellor’s computation of Eddie’s living expenses.
 

 ¶ 29. On his 8.05 financial disclosure statement, Eddie claimed total living expenses of $3,619. Included in the $3,619 figure was $700 for food, $250 for incidentals, and $200 for entertainment, totaling $1,150. The chancellor, finding these figures excessive, reduced them from $1,150 to $600, thereby reducing the total amount of Eddie’s living expenses from $3,619 to $3,069. The chancellor then reduced that figure by $200 after concluding that Eddie, in reaching his figure, contemplated expenses for two children and now is only primarily responsible for one. Accordingly, the chancellor reduced Eddie’s total living expenses to $2,869.
 

 ¶ 30. We also find that the chancellor manifestly erred in calculating Eddie’s reasonable living expenses. The chancellor reduced the food, entertainment, and incidental living expenses claimed by Eddie on his 8.05 financial disclosure statement. The chancellor concluded that Eddie incorporated his expenses and those of both of his children in the claimed expenses for food, entertainment, and incidentals. Therefore, the chancellor reduced the $3,619 that Eddie claimed for living expenses to $3,069. Then, the chancellor further reduced the figure by $200. The problem with the chancellor’s analysis is that he reduced Eddie’s living expenses twice: once when he reduced Eddie’s expenses for food, entertainment, and incidentals to $600, leaving Eddie’s total living expenses at $3,069, and again when he reduced that figure by $200 to $2,869. The children were included in the figures for food, entertainment, and incidentals which were reduced by the chancellor, from $1,150 to $600. When the chancellor reduced the overall figure again by $200, he effectively twice reduced a portion of Eddie’s living expenses.
 

 ¶ 31. Since the appropriate amount of child support is based on a party’s properly calculated adjusted gross income, we are compelled to find that the chancellor manifestly erred in ordering Eddie to pay $490 in child support based upon an erroneous calculation of Eddie’s adjusted gross income. Therefore, we reverse and remand the case on this issue for the chancellor to recalculate Eddie’s adjusted gross income, consistent with this opinion, and to determine the amount of child support for Eddie to pay based on Eddie’s adjusted gross income as determined on remand.
 

 2. The Payment of Periodic Alimony
 

 ¶ 32. The law is clear in Mississippi that “[i]f the situation is such that an equitable division of marital property, considered with each party’s nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered.”
 
 Franks v.
 
 Franks, 759 So.2d 1164, 1167(¶ 8) (Miss.1999) (quoting
 
 Knutson v. Knutson,
 
 704 So.2d 1331, 1333(¶ 10) (Miss.1997)).
 

 ¶ 33. As mentioned, the chancellor valued the marital estate at $304,230 and awarded Nancy $142,990 of this amount. However, since the chancellor ordered Eddie to make a $50,000 lump-sum alimony payment to Nancy out of his portion of the unliquidated equity in the marital home, the effect of the order was to give Nancy $192,990 of the marital estate and to re-
 
 *309
 
 duee Eddie’s $161,240 share of the marital estate to $111,240. Nevertheless, we affirm the chancellor’s grant of $50,000 in lump-sum alimony even though we consider that award part of his distribution of the marital estate. Thus, as we contemplate whether the chancellor erred in ordering Eddie to pay Nancy $12,600 in periodic alimony, we do so from the vantage point that Nancy’s share of the marital estate exceeded Eddie’s by $81,750. On these facts, we are unable to discern a deficit that was suffered by Nancy after the equitable division of the marital estate. Therefore, we find that the chancellor manifestly erred in ordering Eddie to pay Nancy $12,600 in periodic alimony, even though he had determined that Nancy’s separate estate is considerably less than Eddie’s.
 
 [8]
 
 The chancellor was not charged with equitably dividing the parties’ separate estate.
 

 CONCLUSION
 

 ¶ 34. In summary, we affirm the chancellor’s decision awarding Nancy $50,000 in lump-sum alimony from Eddie’s equity in the marital home, although we have determined that the $50,000 constituted a part of the equitable division of the marital estate, not lump-sum alimony, because the equity in the home was unliquidated. We reverse and render the chancellor’s award of $12,600 in periodic alimony to Nancy. We reverse and remand the chancellor’s decision ordering Eddie to pay $490 a month in child support.
 

 ¶ 35. We note that were we to affirm the chancellor in toto, Eddie would be unable to pay the amounts ordered. Based on Eddie’s true adjusted gross monthly income of $3,720, he would have only $151 left after paying the $700 monthly periodic alimony installment (the chancellor ordered the $12,600 paid in monthly installments of $700). Yet, Eddie was also ordered to pay $490 in monthly child support payments. For the reasons mentioned above, we affirm in part, reverse and render in part, and remand this case to the Chancery Court of Neshoba County for further proceedings consistent with this opinion.
 

 ¶ 36. THE JUDGMENT OF THE NESHOBA COUNTY CHANCERY COURT IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLEE AND ONE-HALF TO THE APPELLANT.
 

 LEE, P.J., GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ„ CONCUR. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MYERS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. ROBERTS, J., NOT PARTICIPATING.
 

 [1]
 

 . Eddie actually presents four issues for our review, three pertaining to alimony and one pertaining to child support. Thus, we have consolidated Eddie's three issues as they relate to alimony.
 

 [2]
 

 . The order was filed on June 13, 2006.
 

 [3]
 

 . In
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278 (Miss.1993), the Mississippi Supreme Court delineated factors for chancellors to consider when determining whether alimony is appropriate.
 

 [4]
 

 . Rule 8.05 of the Uniform Chancery Court Rules requires parties in cases involving domestic economic issues or property division to submit a financial disclosure statement.
 

 [5]
 

 . In
 
 Pittman,
 
 4 So.3d at 399 (¶¶ 13, 15), we decided, on facts identical to those here, that the chancellor erred in granting the parties a divorce on the ground of irreconcilable differ-enees because the parties failed to obtain an order withdrawing dieir contest or denial.
 

 [6]
 

 . The court called this requirement a procedural safeguard.
 
 Irby,
 
 7 So.3d at (¶ 54).
 

 [7]
 

 . The Legislature amended section 93-5-2 once again in 2008. The amendment substituted "ground” for "grounds” the second time it appears in subsection (5) and added a new subsection, subsection (7). Miss.Code Ann. § 93-5-2 (Supp.2008).
 

 [8]
 

 . The chancellor determined that Nancy had a separate estate of $13,620 and that Eddie's was $137,500.