766 So.2d 119 (2000)
Steven Dean CHRISTOPHER, Appellant,
v.
Charlotte Weems CHRISTOPHER, Appellee.
No. 1999-CA-00960-COA.
Court of Appeals of Mississippi.
September 5, 2000.
*120 Arnold D. Dyre, Jackson, Christopher A. Tabb, Brandon, Attorney for Appellant.
Sharon Patterson Thibodeaux, Jackson, Attorney for Appellee.
BEFORE KING, P.J., LEE, MYERS, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. Charlotte Christopher filed a complaint for divorce based on irreconcilable differences against Steven Christopher on May 7, 1997. The divorce was finally granted on March 4, 1999, in Rankin County, Mississippi. Feeling aggrieved of the chancellor's division of marital property and valuation of certain assets, Steven appealed to this Court.

FACTS
¶ 2. The Christophers were married on October 14, 1989, in Florida. Two children were born to this union: Chelsea Ashley in 1991 and Colin Andrew in 1994. Charlotte also had a child from a previous marriage, Sevryn Smith, who was seventeen at the time of trial. Child custody and child support are not at issue with this appeal.
¶ 3. The divorce decree awarded Charlotte the following (approximate values in parentheses following description of asset): marital home (equity $52,828); certificate of deposit ($5,000); checking/savings accounts ($250); personalty in her possession, except for the 1991 van. Charlotte's total award equaled $58,078.
¶ 4. Steven was awarded the following: commercial real property ($12,884); American Express Roll Over 401K ($32,025); New York life insurance policy (cash value $8,376); IDS life insurance policy ($78,000); vehicles including a 1991 van, 1988 Peugeot and a 1987 Peugeot racing cars, 1986 cargo hauler, 1983 suburban (approximate combined value $14,500); 1995 Neon ($6,500); 1996 truck ($22,000); 1993 LTD trailer ($8.000); 1987 motor home ($12,500); 1994 mercury ($4,750); business equipment ($5,000); office equipment ($1,750); and all personalty in his possession. Steven's total award equaled $206,285.
¶ 5. Steven argues that the chancellor was manifestly wrong in choosing to divide the property equally without any consideration as to the contribution of the parties. Steven also argues that the chancellor erred in failing to recognize that Steven supported Charlotte's mother and child while they were living with the married couple. Steven requests that we reverse the chancellor and remand for a determination of non-marital property for each party and that we determine how the property could be more equitably distributed.

ARGUMENT AND DISCUSSION OF THE LAW

STANDARD OF REVIEW
¶ 6. With his appeal, Steven Dean Christopher raises the following issues for our review:
I. DID THE TRIAL COURT ERR IN FINDING THAT BOTH PARTIES HAD MADE EQUALLY SUBSTANTIAL CONTRIBUTIONS TO THE ACCUMULATION OF MARITAL PROPERTY WHEN THE HUSBAND HAD EARNED SUBSTANTIALLY MORE MONEY, HAD COMMINGLED ALL HIS SEPARATE ASSETS AND HAD BORROWED FUNDS FROM HIS FAMILY TO PAY MARITAL OBLIGATIONS AND THE WIFE HAD TAKEN HER SEPARATE ESTATE AND PLACED IT IN A CD IN HER NAME ALONE?
II. DID THE TRIAL COURT ERR IN DIVIDING PROPERTY EQUALLY WHEN IT USED NON-CURRENT VALUES OF FINANCIAL ASSETS WHEN THE CURRENT VALUES WERE AVAILABLE AND THE DIFFERENCES WERE SUBSTANTIAL?
*121 ¶ 7. We first look to our standard of reviewing a chancellor's decision concerning domestic matters and equitable distribution of property.
It is well-established by this Court that the chancery court has the authority to order an equitable division of property that was accumulated through the joint efforts and contributions of the parties. A chancellor's equitable division of marital property is also subject to the traditional scope of review in which this Court will not disturb the chancellor's findings" ... unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied."
Johnston v. Johnston, 722 So.2d 453 (¶ 28) (Miss.1998) (citations omitted). Applying this standard to the present case, we find the chancellor did not err in his division of marital property or in any other regard, and we affirm his decision.

DISCUSSION OF THE ISSUES

I. DID THE TRIAL COURT ERR IN FINDING THAT BOTH PARTIES HAD MADE EQUALLY SUBSTANTIAL CONTRIBUTIONS TO THE ACCUMULATION OF MARITAL PROPERTY WHEN THE HUSBAND HAD EARNED SUBSTANTIALLY MORE MONEY, HAD COMMINGLED ALL HIS SEPARATE ASSETS AND HAD BORROWED FUNDS FROM HIS FAMILY TO PAY MARITAL OBLIGATIONS AND THE WIFE HAD TAKEN HER SEPARATE ESTATE AND PLACED IT IN A CD IN HER NAME ALONE?
¶ 8. With this argument, Steven argues that the chancellor failed to make any finding as to which assets could be classified as marital assets and which could be classified as non-marital assets. Steven also disagrees with the chancellor's finding that Steven's contributing his proceeds from pre-marital property to the marriage resulted in their commingling and becoming marital assets.
¶ 9. In ruling on the case sub judice, the chancellor meticulously and thoroughly reviewed the Hemsley[1] factors and scrupulously analyzed the behaviors of the two parties prior to and throughout their marriage to arrive at his conclusion that each had equally contributed to the marriage. The chancellor describes how Charlotte may have earned less income, yet she provided domestic care for their home and children at her times of unemployment and did not "run up" a lot of debt as Steven did. Contrarily, the chancellor notes that *122 while Steven earned more income, he also "repeatedly made unnecessary expenditures for expensive items of property, including a race car, non-essential passenger vehicles, a 1996 Chevrolet dual-wheel pickup truck used primarily to haul race cars and equipment, and a Ford motor home... [plus] a building on Commerce Street... which poses no advantage to the family."
¶ 10. In Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994), the Mississippi Supreme Court opted not to penalize the wife for staying home and "rocking the cradle" while her military husband acted as breadwinner for the family. Hemsley, 639 So.2d at 914-15. The court instead ruled that all property obtained during the marriage, including both tangible property and domestic services, is to be included when considering contributions to the marriage for purposes of equitable distribution of assets.
We, today, recognize that marital partners can be equal contributors whether or not they both are at work in the marketplace. We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.
Hemsley, 639 So.2d at 915.
¶ 11. "In a determination of the division of marital property, both spouses' contributions during the marriage should be thoroughly evaluated by the chancellor." Traxler v. Traxler, 730 So.2d 1098 (¶ 21) (Miss.1998) (citing Chamblee v. Chamblee, 637 So.2d 850 (Miss.1994)). The chancellor concluded that Charlotte's and Steven's acts compelled the logical conclusion that each had made equal contributions to the marriage, and thus, the martial assets should be divided equally. Since the chancellor considered the Ferguson factors, as described in Hemsley, there is no manifest error, and we will not reverse.

II. DID THE TRIAL COURT ERR IN DIVIDING PROPERTY EQUALLY WHEN IT USED NON-CURRENT VALUES OF FINANCIAL ASSETS WHEN THE CURRENT VALUES WERE AVAILABLE AND THE DIFFERENCES WERE SUBSTANTIAL?
¶ 12. Steven argues that the chancellor valued certain assets incorrectly, namely the marital home, a commercial building, a life insurance policy and an American Express Roll Over 401(K) Account.
¶ 13. First, with the house, the chancellor stated that the home had a stipulated value of $169,000 and that the mortgage on the home was approximately $116,171 leaving the equity at $52,829, which was awarded to Charlotte. Steven argues the $169,000 figure was six months old and that the chancellor overvalued the home, in light of the fact that much repair would have to be done to the home to sell it at that price. However, on both his March 1998 and November 1998 8.05 financial reports, Steven estimated the value of his home to be $170,000. Plus, on his May 1998 bankruptcy petition, he listed his homestead as worth $169,000. Considering the mortgage value during these periods was approximately $117,000, the chancellor's decision to assign the equity in the home at $52,000 resulted in an accurate valuation. Since Steven at least these three times agreed that the value of the home was approximately the $169,000 to which he now objects, we find no abuse of discretion in the chancellor's valuation of the home.
¶ 14. Concerning the IDS life insurance policy, at the trial on this matter, which began in March 1998 and eventually finished in November 1998, the court used *123 the $78,000 figure that came from Steven's April 29, 1998 bankruptcy filing. Steven had also reported on his November 1998 financial statement that the cash value of the same policy was $57,022, citing as the discrepancy that "this particular investment is invested in the stock market, and presumably, like everybody else, you would have known that the stock market has had a significant devaluation since the time period, most specifically July of this year, and that particular asset has risen and fallen with the stock market." By Steven's own admission, the exact value of the insurance policy cannot be assigned a specific value by virtue of the investment's shifty nature. Thus, we find the chancellor did not abuse his discretion in selecting one of the numbers that was provided to him in the documentation.
¶ 15. Next with the commercial building, Steven had listed the building's worth at $50,000 on his 8.05 financial statements of June 1997 and March 1998, as well as on his May 1998 bankruptcy petition. Steven argues that the bankruptcy court found no equity in the building and Steven reaffirmed the debt, still owing $38,272 on building. The chancellor allowed Steven the $50,000 figure less the mortgage amount, leaving him with an approximate equity of $12,844. Since Steven did not provide the chancellor with any other verification of another figure regarding valuation of the property, the chancellor was justified in using the $50,000 that appeared in the various financial statements provided to him.
¶ 16. Finally, with the American Express 401(K) account, Steven again argues that the chancellor erred in valuating such account at $32,025; however, Steven fails to state how he believes the chancellor erred. Again the chancellor used the figure on Steven's bankruptcy petition to arrive at the $32,025 value. As such, there was no abuse his discretion in valuating this account or in any of the chancellor's other valuations.

CONCLUSION
¶ 17. Finding all of the appellant's arguments to be without merit, we affirm the decision of the Rankin County Chancery Court.
¶ 18. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, AND THOMAS, JJ., CONCUR.
NOTES
[1] Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994) cited to Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994), which described factors governing equitable distribution of marital property:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.