MAXWELL, J.,
 

 for the Court.
 

 ¶ 1. Billy J. Cossey alleges the Pontotoc County Chancery Court erred in (1) granting him a divorce from his wife, Nancy L. Cossey, on irreconcilable differences grounds; (2) awarding unreasonable visitation rights between him and his nineteen-year-old son, Tyler Cossey; (3) ordering him to pay one-half of the college expenses for Tyler; and (4) administering the equitable distribution of assets. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Billy and Nancy have been married to each other twice. Their most recent marriage took place on March 4, 1977. The couple has three children: Dionne Gu-
 
 *355
 
 ter Cossey; Billy Cossey Jr.; and Tyler. Their youngest son, Tyler, was born on July 18, 1988, and was not emancipated at the time of trial.
 
 [1]
 

 ¶ 3. Billy and Nancy separated in January 2002. Over five years later, on September 5, 2007, Billy filed his complaint for divorce. He alleged adultery, desertion, and habitual cruel and inhuman treatment as grounds for the divorce. The complaint also contained an alternative claim that irreconcilable differences existed between him and Nancy. Nancy denied the allegations, and filed a counter-complaint for divorce on the grounds of desertion, adultery, and habitual cruel and inhuman treatment. In the alternative, she argued irreconcilable differences existed between the two of them. Nancy also sought legal and physical custody of Tyler. Billy denied the allegations in Nancy’s counter-complaint.
 

 ¶ 4. Thereafter, on March 17, 2008, Billy and Nancy filed a consent agreement. The two agreed to a divorce based on irreconcilable differences, but set forth twenty-three separate areas of dispute for the chancellor to resolve. Among the contested issues were identification, valuation, and distribution of the marital assets. Nancy also requested past and future child support, medical expenses, and college expenses for Tyler. They also disagreed over the paternity of Tyler, whom Billy contended was not his natural son, though he had raised him as his son since birth.
 

 ¶ 5. After a two-day trial, the chancellor granted Billy and Nancy a divorce based on irreconcilable differences. The chancellor entered a twenty-eight page judgment in which he directed the equitable distribution of the marital assets, and ordered the parties and Tyler to undergo paternity testing.
 
 [2]
 
 The chancellor conditioned his rulings concerning custody, visitation, and past and future child support, medical expenses, and college expenses on the outcome of the paternity tests.
 
 [3]
 

 ¶ 6. The chancellor awarded legal and physical custody of Tyler to Nancy. He granted Billy visitation with Tyler according to Tyler’s wishes. The chancellor also ordered Billy to provide child support to Nancy. The child support award was based on fourteen percent of Billy’s adjusted gross income. The chancellor further held the college expenses of Tyler would be borne equally by Billy and Nancy.
 

 ¶ 7. Nancy was also awarded $10,403.05 for past school expenses, child support, and medical expenses.
 

 STANDARD OF REVIEW
 

 ¶ 8. We will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.
 
 Sanderson v. Sanderson,
 
 824 So.2d 623, 625-26(¶ 8) (Miss.2002). We review questions of law de novo.
 
 Estate of Jones v. Howell,
 
 687 So.2d 1171, 1174 (Miss.1996).
 

 ANALYSIS
 

 I. Divorce on Ground of Irreconcilable Differences
 

 
 *356
 
 ¶ 9. “[D]ivorce in Mississippi is a creature of statute.”
 
 Perkins v. Perkins, 787
 
 So.2d 1256, 1261(¶ 11) (Miss.2001) (quoting
 
 Gardner v. Gardner,
 
 618 So.2d 108, 111-13 (Miss.1993)). A divorce based on irreconcilable differences has certain statutory requirements that must be strictly complied with.
 
 Id.; see also Irby v. Estate of Irby ex rel. Marshall, 7
 
 So.3d 223, 239(¶ 54) (Miss.2009). Mississippi Code Annotated section 93-5-2 (Supp. 2008) provides the procedure for divorce on the ground of irreconcilable differences. Specifically, section 93-5-2(3) allows parties who desire an irreconcilable differences divorce, but cannot agree on custody, maintenance, or property division, to consent to allow the chancery court to decide the disputed issues. The consent agreement must be in writing and signed by both parties.
 
 Id.
 
 In addition, the parties must acknowledge that the decision of the court will be a binding and lawful judgment.
 
 Id.
 

 ¶ 10. Section 93-5-2(5) requires withdrawal or cancellation of a party’s original denial or contest before an irreconcilable differences divorce may be granted as follows:
 

 Except as otherwise provided in subsection (3) of this section, no divorce shall be granted on the ground of irreconcilable differences where there has been a contest or denial; provided, however, that a divorce may be granted on the ground of irreconcilable differences where there has been a contest or denial, if the contest or denial has been withdrawn or cancelled by the party filing same by leave and order of the court.
 

 ¶ 11. Billy alleges the chancellor erred in granting an irreconcilable differences divorce because the parties did not withdraw or cancel their former contests or denials, as required by section 93-5-2(5). However, Nancy argues the filing of a consent agreement, pursuant to section 93-5-2(3) satisfied the statutory requirements for a divorce based on irreconcilable differences.
 

 ¶ 12. Recently, in
 
 Irby,
 
 the supreme court addressed this identical issue.
 
 Irby, 7
 
 So.3d at 236, 239-40 (¶¶ 43, 54). In
 
 Irby,
 
 the supreme court found that where parties filed a consent agreement in compliance with Mississippi Code Annotated section 93-5-2(3), a chancellor may order a divorce on the ground of irreconcilable differences even though the parties did not move to withdraw their contests.
 
 Irby, 7
 
 So.3d at 239-40(¶ 54) (citing Miss.Code Ann. § 93-5-2). More specifically, the supreme court instructed:
 

 The plain language of subsection (5) mandates that a contest or denial be withdrawn or canceled, by leave and order of the court, by the party who filed the contest or denial. This is a procedural safeguard which has existed within the framework of [sjection 93-5-2 since its promulgation. However, the exception clause, which was added in 1990 when the statute was amended to provide for “trial by mutual consent,” clearly indicates that subsection (5) should be read in conjunction with subsection (3).
 
 Once the parties fully and properly acceded to the procedural strictures of subsection (3), the safeguards provided by subsection (5) were no longer necessary.
 

 Id.
 
 (emphasis added and internal citation omitted). We recently applied
 
 Irby
 
 ⅛ holding in
 
 Sellers v. Sellers,
 
 22 So.3d 299, 2007-CA-01459-COA (¶ 22) (Miss. Ct.App. June 23, 2009).
 
 [4]
 
 A few months later, in
 
 *357
 

 O’Neal v. O’Neal,
 
 17 So.3d 572 (¶ 18) (Miss.2009), the supreme court revisited this identical issue and reaffirmed
 
 Irby
 
 ⅛ holding, noting “[t]he
 
 Irby
 
 decision made it exceedingly clear that, pursuant to Mississippi Code [Annotated] Section 93-5-2, no ... withdrawal of the initially asserted fault-based grounds is necessary.”
 

 ¶ 13. In the present case, the parties complied with the requirements of subsection (3) and filed a consent agreement prior to trial. This written agreement, which was signed by both parties, indicated “the parties have agreed there are irreconcilable differences between them and agree and consent that a divorce be granted to them on grounds [sic] of irreconcilable differences.” The consent agreement also contained stipulated issues of dispute between the parties for the chancellor to determine. Further, the terms of the consent agreement made clear that after the chancellor commenced the hearing, the parties could not withdraw their consent without leave of court.
 

 ¶ 14. We find the parties provided express written consent to permit the chancellor to decide each of the issues and explicitly acknowledged they understood the chancellor’s decisions would be binding. Because the parties fully and properly acceded to the procedural strictures of Mississippi Code Annotated section 95-5-2(3), we find the safeguards provided by subsection (5) — namely the withdrawal of any contest or denial — were no longer necessary.
 

 ¶ 15. We reach this decision, as we did in
 
 Sellers,
 
 by strictly applying the supreme court’s recent interpretation of section 95-5-2(3) and (5). Accordingly, we find the chancellor did not err in granting a divorce based on irreconcilable differences.
 

 II. Visitation
 

 ¶ 16. Billy next argues the chancellor abused his discretion in granting Billy limited visitation with Tyler. His complaint is based on the chancellor’s acceptance of Tyler’s desires, rather than Billy’s.
 

 ¶ 17. The right and obligation for visitation ceased upon Tyler’s twenty-first birthday, which was July 15, 2009. Miss. Code. Ann. § 93-11-65(8)®;
 
 see also Caldwell v. Caldwell
 
 579 So.2d 543, 549 (Miss.1991) (“In a general sense, parental emancipation signifies a surrender and renunciation of the correlative rights and duties touching the care, custody, and earnings of the child.”). The supreme court has stated that “[c]ases in which an actual controversy existed at trial but the controversy has expired at the time of review, become moot.”
 
 Allred v. Webb,
 
 641 So.2d 1218, 1220 (Miss.1994). Because Tyler is now emancipated, this issue is moot.
 

 III. College Expenses
 

 ¶ 18. Billy also contends the chancellor erred in requiring him to pay one-half of Tyler’s college expenses.
 

 ¶ 19. “[A]n award of child support is a matter within the discretion of the chancellor and that determination will not be reversed unless the chancellor was manifestly wrong in his finding of fact or manifestly abused his discretion.”
 
 Fancher v. Pell
 
 831 So.2d 1137, 1141(¶ 20) (Miss.2002) (citing
 
 Gillespie v. Gillespie,
 
 594 So.2d 620, 622 (Miss.1992)). Further, “[t]he process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains [appellate] review.”
 
 Id.
 

 ¶ 20. In Mississippi, the duty to send a child to college is not absolute.
 
 Wallace v. Wallace,
 
 965 So.2d 737,
 
 *358
 
 745(¶ 27) (Miss.Ct.App.2007). Rather, it is dependent upon the child’s aptitude for college, the child’s behavior toward and relationship with the parent, and the parent’s ability “to pay for the education without affecting his customary lifestyle.”
 
 Id.
 
 (citing
 
 Saliba v. Saliba,
 
 753 So.2d 1095, 1101(¶ 21) (Miss.2000);
 
 Lawrence v. Lawrence,
 
 574 So.2d 1376, 1383 (Miss.1991)). “[O]ne or both parents may be ordered to pay part or all of a child’s college tuition and related expenses.”
 
 Wallace,
 
 965 So.2d at 745(¶ 27) (citing
 
 Saliba,
 
 753 So.2d at 1101(¶ 21)). The supreme court has also held that payments of a child’s educational expenses are seldom used “as offset for child support, ‘as they do not diminish the child’s need for food, clothing and shelter.’”
 
 Fancher,
 
 831 So.2d at 1141(¶ 23) (quoting
 
 Varner v. Varner,
 
 588 So.2d 428, 435 (Miss.1991)).
 

 A. Aptitude for College
 

 ¶ 21. The record reflects that Tyler is presently enrolled in community college in his fourth semester and has attained good grades. The evidence before us also shows Billy had the ability to pay for his son’s college expenses without substantially affecting his customary lifestyle. In fact, Billy testified he would pay one-half of Tyler’s college expenses until he turned twenty-one years old. After that, his educational support would depend upon Tyler’s performance in school.
 

 B. Behavior and Relationship with Parent
 

 ¶ 22. With regard to Tyler’s relationship with Billy, it appears that prior to the couple’s separation, Billy and his son had a good relationship. However, the chancellor noted the relationship began to deteriorate when Billy denied he was Tyler’s father after raising him since birth.
 

 C.Parent’s Ability to Pay
 

 ¶ 23. Billy argues the chancellor did not specifically find he had the financial ability to pay Tyler’s college expenses. He also complains the chancellor did not apportion Tyler’s college expenses according to Billy’s and Nancy’s respective incomes. We note the chancellor found Billy’s adjusted gross income was $2,555 per month, but he also pointed out that Billy was engaged in heavy-equipment dirt work, which resulted in “much unreported, untaxed income.” In addition, the chancellor held that both Billy and Nancy would be financially secure considering the property division and child support since “[b]oth of the [parties were] gainfully employed, ha[d] their separate incomes and retirements, and [Billy] ... exhibited an outside earning capacity in heavy-equipment work.” Thus, we find the chancellor did not abuse his discretion in determining that Billy had the financial ability to pay for one-half of Tyler’s college expenses.
 

 ¶ 24. Billy’s argument that the chancellor
 
 must
 
 apportion college expenses between parents based on their respective incomes also lacks merit.
 
 Saliba,
 
 753 So.2d at 1101(¶ 22). In
 
 Saliba,
 
 the supreme court considered and rejected a similar argument raised by a father who claimed the chancellor erred in equally apportioning responsibility for college expenses where the mother’s net worth exceeded the father’s.
 
 Id.
 
 The supreme court noted the chancellor “does not merely apply a mathematical proportionality formula” in apportioning college expenses.
 
 Id.
 
 at (¶ 22). Here, the chancellor found both parents had ample means to pay. Based on our review, the chancellor’s findings on this issue are supported by substantial evidence and are not clearly erroneous.
 

 IV. Equitable Distribution of Marital Assets
 

 
 *359
 
 ¶ 25. Chancellors have the authority to order an equitable division of property accumulated through the joint efforts and contributions of the parties.
 
 Christopher v. Christopher,
 
 766 So.2d 119, 121(¶ 7) (Miss.Ct.App.2000). In equitably dividing marital property, chancellors must consider the following guidelines, commonly known as the
 
 Ferguson
 
 factors:
 

 (1) contribution to the accumulation of property, (2) dissipation of assets, (3) the market or emotional value of assets subject to distribution, (4) the value of assets not subject to distribution, (5) the tax and economic consequences of the distribution, (6) the extent to which property division may eliminate the need for alimony, (7) the financial security needs of the parties, and (8) any other factor that in equity should be considered.
 

 Hults v. Hults,
 
 11 So.3d 1273, 1281(¶ 36) (Miss.Ct.App.2009) (citing
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928-29 (Miss.1994)).
 

 ¶ 26. Billy acknowledges the chancellor used the correct legal standard outlined in
 
 Ferguson
 
 for the equitable distribution of marital property. However, he claims the chancellor’s judgment is unclear as to which assets were subject to equitable distribution. Billy also alleges the chancellor erred by valuing Billy’s retirement as of the date of trial and valuing Nancy’s retirement on the date of separation.
 

 ¶ 27. This Court has held that “when making an equitable distribution of marital property, [chancellors] are not required to divide the property equally.”
 
 Goellner v. Goellner
 
 11 So.3d 1251, 1264(¶ 45) (Miss.Ct.App.2009) (quoting
 
 McLaurin v. McLaurin,
 
 853 So.2d 1279, 1283(¶ 11) (Miss.Ct.App.2003)). And, in reviewing a chancellor’s judgment concerning property division, the appellate court does not conduct a
 
 Ferguson
 
 analysis anew. Instead, the judgement is reviewed to ensure the chancellor followed appropriate standards and did not abuse his or her discretion.
 
 Goellner,
 
 11 So.3d at 1264(¶ 45) (citing
 
 Phillips v. Phillips,
 
 904 So.2d 999, 1001(¶ 8) (Miss.2004)).
 

 ¶ 28. Here, the chancellor’s judgment consists of twenty-eight pages. Nineteen of those pages are committed to the chancellor’s determination of (1) what constituted marital property, (2) his valuation of the property, and (3) the manner of distribution of the property. The chancellor was faced with the daunting task of untangling assets and allegations which arose over the course of a thirty-year marriage, including a six-year period of separation. After a thorough review, we find the chancellor fully examined each of the
 
 Ferguson
 
 factors in reaching his determination. In addition, he was confronted with evidence that Billy concealed marital property, had friends and neighbors lie about their ownership of property, and ceased contributing to his retirement account upon his and Nancy’s separation.
 

 ¶29. While Billy complains the judgment did not clearly describe which assets were marital, the chancellor pointed out “all properties described herein are marital properties accumulated during their marriages and subject to equitable distribution, unless stated otherwise.” The chancellor specifically identified the items and value of the marital property, and then directed the disposition of the property. Therefore, we find the chancellor’s judgment clearly states the identity, value, and disposition of the marital property.
 

 ¶ 30. Billy next complains the chancellor erred in valuing his retirement account as of the date of trial, and Nancy’s retirement account as of the date of separation. Specifically, the chancellor valued
 
 *360
 
 Nancy’s retirement as of the date of separation as “part of [the c]ourt-determined equitable distribution, as opposed to the current-amount balance.” However, Billy fails to cite any authority to support his argument that the chancellor erred in valuing the retirement accounts at differing times; therefore, this issue is procedurally barred.
 
 See, e.g., Dampier v. State,
 
 973 So.2d 221, 228-29(¶ 20) (Miss.2008) (citation omitted). Notwithstanding the procedural bar, we note the record reflects that the chancellor valued the retirement accounts after considering undisputed evidence that upon separation from Nancy, Billy discontinued contributions to his retirement account, while Nancy continued making contributions to her retirement account. Thus, we find the chancellor did not abuse his discretion in valuing the retirement accounts from different dates.
 

 ¶ 31. Further, Billy alleges the chancellor’s distribution of the property is not supported by substantial evidence because it is unclear what assets the chancellor considered in entering a monetary judgment of one-half of the total assets subject to equitable distribution. The chancellor entered $343,598.59 as the total marital assets in paragraphs 23 and 24 of his corrected judgment, and awarded one-half of this amount, $171,799.29, to each of the parties.
 

 ¶ 32. After reviewing the corrected judgment, we find the chancellor’s calculations were clearly based on the values assigned to all marital property set forth in the judgment. However, in comparing the original judgment with the corrected judgment, we note that it is apparent the chancellor did not accurately recalculate the total assets subject to equitable distribution upon entering his corrected judgment,
 
 [5]
 
 which revised an error found in the valuation of the lumber in the original judgment.
 
 [6]
 
 This miscalculation in the corrected judgment is obviously a clerical error, which the chancellor should be given an opportunity to correct. Using the corrected value of the lumber, the total value of assets subject to equitable distribution is $344,108.59; one-half of which is $172,054.29.
 

 ¶ 33. Though we find the chancellor did not commit reversible error in equitably dividing the property, as his calculations were properly based on all marital property, we must remand, the case to the chancellor for the limited purpose of correcting the sole clerical error present in his corrected judgment.
 

 ¶ 34. THE JUDGMENT OF THE PONTOTOC COUNTY CHANCERY COURT IS AFFIRMED, AND THE CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
 

 [1]
 

 . Since the trial, Tyler has become emancipated.
 
 See
 
 Miss.Code. Ann. § 93 — 11—65(8)(i) (Supp.2008).
 

 [2]
 

 . The chancery court later entered a corrected judgment for divorce wherein he revised . typographical errors.
 

 [3]
 

 . The parties acknowledge the court-ordered paternity tests established Billy was Tyler’s natural father.
 

 [4]
 

 . We note that
 
 Sellers
 
 is not a final decision due to a pending motion for rehearing.
 
 See Gray v. Univ. of Miss. Sch. of Med.,
 
 996 So.2d
 
 *357
 
 75, 79(¶ 11) (Miss.Ct.App.2008) (citation omitted).
 

 [5]
 

 . We find the miscalculation in this case calls for the same course of action taken in
 
 Parker v. Mississippi Department of Human Services,
 
 827 So.2d 18, 20(¶ 5) (Miss.Ct.App.2002). There, we remanded die case for the chancellor to correct a similar error in the chancellor's child-support order.
 
 Id.
 

 [6]
 

 . In section VII, number 2(e) of the corrected judgment, the chancellor revised a typographical error in the valuation of lumber, but did not use the substituted value when calculating the total marital assets, resulting in a $510 deficit.