GRIFFIS, P.J.,
for the Court:
¶ 1. Darnice Scott appeals the chancery court’s amendment of an order that divided her ex-husband Jerry Scott’s retirement benefits under the Railroad Retirement Act. She argues that the chancellor erred in classifying the error in the order as a clerical mistake under Mississippi Rule of Civil Procedure 60(a). On appeal, Darnice argues that the chancellor erred: (1) in amending the order dividing Jerry’s railroad retirement benefits and (2) in denying attorney’s fees to Darnice. We find no error and affirm.
FACTS
¶ 2. Darnice and Jerry were married on July 21, 1973. On December 10, 1997, Jerry and Darnice were divorced pursuant to an Agreed Judgment. A Property Settlement Agreement was incorporated into the Judgment. In December of 1997, the chancellor also entered an Order Dividing Railroad Retirement Benefits. In January of 1998, the Railroad Retirement Board approved the Order.
*849 ¶ 3. Paragraph 23 of the 1997 Agreement stated:
Husband and wife agree that the wife shall be entitled to receive all benefíts[ ] under the Tier II of the husband’s retirement under the Railroad Retirement Act. Husband and Wife acknowledge and agree that the only benefit[s] of the husband for which she is receiving under the Railroad Retirement Act is the benefits set forth in Tier II of Jerry C. Scott through the date of divorce.
(Emphasis added). Paragraph 5 of the 1997 Order awarded more benefits to Darnice than the Agreement provided. It stated:
IT IS THEREFORE, ORDERED AND ADJUDGED that Darnice Love Scott is awarded, and the Railroad Retirement Board is directed to pay, an interest in the portion of Jerry Clyde Scott’s benefits under the Railroad Retirement Act.... [Darnice] Love Scott’s share shall be computed as an amount equal to one hundred percent (100%) of Jerry Clyde Scott’s Tier II divisible benefits.
¶ 4. In 2010, Jerry filed a motion to modify the 1997 Order. After a hearing, the chancellor determined that a clerical mistake required correction pursuant to Mississippi Rule of Civil Procedure 60(a). The chancellor amended Paragraph 5 of the 1997 Order to read:
Darnice Love Scott’s share shall be computed as an amount equal to one hundred percent (100%) of Jerry Clyde Scott’s Tier II divisible benefits through December 10, 1997, which is the date of the divorce. Jerry Clyde Scott’s share shall be computed as an amount equal to one hundred percent (100%) ■ of Jerry Clyde Scott’s Tier II divisible benefits from and after December 10,1997.
¶ 5. It is from the 2010 Amended Order that Darnice appeals. Darnice argues the error in the Order was a substantive error and could not be corrected using Rule 60(a).
STANDARD OF REVIEW
¶ 6. In appeals from the chancery court, this Court applies a limited standard of review. See West v. West, 891 So.2d 203, 209 (¶ 8) (Miss.2004). “This [C]ourt will not disturb the findings of a chancellor [when supported by substantial evidence] unless the chancellor was manifestly wrong” or applied an erroneous legal standard. Palmere v. Curtis, 789 So.2d 126, 128 (¶ 4) (Miss.Ct.App.2001) (citation omitted). The standard of review for a chancellor’s decision is abuse of discretion. Townsend v. Townsend, 859 So.2d 370, 372 (¶ 7) (Miss.2003) (citation omitted). For questions of law, the standard of review is de novo. Id. (citation omitted).
ANALYSIS
¶ 7. Mississippi Rule of Civil Procedure Rule 60(a) provides:
Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders....
Rule 60(a) is applicable here because the limiting language contained in the Agreement that was signed[1] by the parties was omitted Jfrom the original 1997 Order by the chancellor. Rule 60(a) does not define “clerical mistakes” or “errors therein aris *850 ing from oversight or omission.” “Rule 60(a) procedure can be utilized only to make the judgment or other document speak the truth.” M.R.C.P. 60(a) cmt.
¶ 8. “Rule 60(a) cannot be used to reflect a change in mind by the judge.” Seymour v. Seymour, 869 So.2d 1035, 1036 (¶ 4) (Miss.Ct.App.2004). However, it can be used “to correct an order that failed accurately to reflect the judge’s original decision.” Id.
¶ 9. In Whitney National Bank v. Smith, 613 So.2d 312, 315 (Miss.1993), the supreme court stated “the power granted in [Rule 60(a) ] cannot be utilized to change the effect of a judgment, where the changed effect is not manifest from the record that the change reflects the original intent.” Here, the changed effect in the Order is manifest from the record, and the change reflects the original intent in the Agreement signed by both parties.
¶ 10. “Property settlement agreements are contractual obligations.” West, 891 So.2d at 210 (¶ 13). Divorce agreements are “no different from any other contracts].” East v. East, 493 So.2d 927, 931-32 (Miss.1986). When determining the meaning of a property settlement agreement, we employ an objective standard, not taking into consideration the parties’ subjective intent or belief. Palmere, 789 So.2d at 131 (¶ 10) (citation omitted).
¶ 11. Contract interpretation is a three-step process:
First, we look to the “four corners” of the agreement and review the actual language the parties used in their agreement. When the language of the contract is clear or unambiguous, we must effectuate the parties’ intent. However, if the language of the contract is not so clear, we will, if possible, harmonize the provisions in accord "with the parties’ apparent intent. Next, if the parties’ intent remains uncertain, we may discre-tionarity employ canons of contract construction. Finally, we may also consider parol or extrinsic evidence if necessary.
Williams v. Williams, 37 So.3d 1196, 1200 (¶ 10) (Miss.Ct.App.2009) (citations and quotations omitted).
¶ 12. This Court “is not concerned with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended.” Ivison v. Ivison, 762 So.2d 329, 335 (¶ 17) (Miss.2000). Darnice argues that “through the date of divorce” meant that Jerry was acknowledging that he would continue to pay into the Tier II retirement through the date of the divorce. However, reading the Agreement as a whole, the language of it is clear, so “we must effectuate the parties’ intent” as displayed in the Agreement’s express terms. Williams, 37 So.3d at 1200 (¶ 10).
¶ 13. The Agreement reflects that Darnice was to receive all the Tier II benefits through the date of the divorce. It reflects that Jerry was to receive all the Tier II benefits after the date of the divorce and all the Tier I benefits. The original 1997 Order did not effect the terms of the Agreement since it, either by omission or oversight, did not contain the words similar to “through the date of divorce.”
¶ 14. The original 1997 Order gave all the Tier II benefits to Darnice, even those after the marriage ended. This was contrary to the express terms of the Agreement. The 1997 Order relied on its authority from the Judgment and the Agreement.
¶ 15. “[T]he mistake must be in drafting and not in the making of the contract.” Townsend, 859 So.2d at 379 (¶ 28). Here, the mistake was in the drafting of the *851 Order. The contract signed by the parties, the Agreement, had no mistake in it. The chancellor’s 1997 Order contained the omission. The amendment of the 1997 Order was not the reformation of a contract.
¶ 16. The chancellor did not alter or amend the Judgment or the Agreement. Instead, under authority provided in Rule 60(a), the chancellor clarified an oversight or omission in the original 1997 Order that was contrary to the parties’ express terms in the Judgment and the Agreement.
¶ 17. The chancellor did not abuse his discretion, did not apply an erroneous legal standard, and was not manifestly wrong in amending the 1997 Order Dividing Jerry’s Retirement Benefits to correct an omission so that the order accurately reflected the express terms of the Agreement.
¶ 18. As a second issue, Darnice argues that the chancellor erred in denying her request for an award of attorney’s fees. Because we affirm the chancery court’s decision, it is not necessary for us to consider the second issue.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF LAUDER-DALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. The Agreement was signed by both parties. The Judgment was signed by both parties. The 1997 Order was not signed by either party and does not state which party submitted or prepared the Order. The 1997 Order had the chancellor’s signature and unidentified initials above the typed names of the attorneys.