# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00171-COA

**STEVEN FRANKLIN SHARP**                                        **APPELLANT**

**v.**

**KIMBERLY ANN ROSSUM SHARP**                                  **APPELLEE**

DATE OF JUDGMENT:                02/08/2024
TRIAL JUDGE:                     HON. ROBERT GEORGE CLARK III
COURT FROM WHICH APPEALED:       MADISON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:         MARTY CRAIG ROBERTSON
                                 SARAH HUNTER DIDLAKE
ATTORNEY FOR APPELLEE:           TRHESA BARKSDALE PATTERSON
NATURE OF THE CASE:              DOMESTIC RELATIONS
DISPOSITION:                     AFFIRMED - 09/23/2025
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McCARTY AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Steven Franklin Sharp (Steve) appeals from the "Order Clarifying Final Judgment of Divorce" entered by the Madison County Chancery Court. Because we find that the chancellor had the authority to clarify and correct the final judgment and made no reversible error, we affirm.

## FACTS

¶2.     Steve and Kimberly Ann Rossum Sharp (Kimberly) were married on July 31, 1999. Three daughters were born of the marriage: Keller, who was born in November 2001, and twins Sage and Sierra, who were born in June 2004. On May 21, 2019, Kimberly filed her "Complaint for Divorce, Motion for Declaratory Judgment & Motion for Temporary Relief."

Steve filed his "Answer and Affirmative Defenses to Complaint for Divorce, Motion for Declaratory Judgment and Motion for Temporary Relief" on June 18, 2019.[1] On December 16, 2019, Steve filed a "Counterclaim for Divorce."[2]

¶3. After a temporary hearing on January 21, 2020, the chancellor entered a "Temporary Order" on January 30, 2020, ruling that the parties would share temporary joint legal custody of the children, but Kimberly would have temporary physical custody of the girls, subject to Steve's visitation rights as set forth in the order. Among other things, the temporary order also required that Steve pay Kimberly $2,500 per month in child support and required that Steve continue to pay the children's school expenses on a monthly basis. At the time of the temporary hearing, the children were attending private schools. Two children attended the same school, and one of the twins attended a different school.

¶4. This case was tried over twelve days in May, November, and December of 2021. On March 21, 2022, the court entered a judgment granting Steve a divorce from Kimberly on the ground of uncondoned adultery and ordered that the temporary order would remain in full force and effect until further order of the court. Over a year later, on September 25, 2023, the court entered an "Order Granting Second Petition for Citation of Contempt and Motion for

---

[1] There is a discrepancy as to when the parties separated. Kimberly's complaint claims the parties separated around March 15, 2019, while Steve's counterclaim alleges that the parties did not separate until December 13, 2019.

[2] Numerous motions were filed during the course of the proceedings in chancery court; however, for purposes of this appeal, we will address only those motions and rulings that are relevant to the issues Steve raises on appeal.

Release of Funds in Section 529 Educational Accounts."[3] In this order the court reiterated that the temporary order "remains in full force and effect until further order of this Court." The chancellor found Steve in contempt for failing to pay Kimberly $4,000 per month in alimony for seven months, for a total of $28,000, and for failing to maintain health insurance for Kimberly for a year. The chancellor also granted Kimberly's "Motion for Release of Funds in Section 529 Educational Accounts."[4] In this regard, the order states:

> The [c]ourt hereby orders that the Plaintiff shall be reimbursed for any amount expended for the three children's tuition, room and board (reimbursement for boarding expenses not to exceed the cost of on-campus boarding), school-related expenses, and school related fees from the funds in the Section 529 educational accounts [*account information in Sharp v. Sharp Trial Exhibits Nos. #24-26*], within 30 days of the entrance of this Order. All educational account funds remaining after the reimbursement to the Plaintiff shall be used for the children's educational expenses.[5]

¶5. Steve did not, however, reimburse Kimberly for the girls' educational expenses as ordered. On October 24, 2023, Steve filed a motion for accounting and other relief, alleging that Kimberly had failed to provide proof that she had actually paid the expenses for which

---

[3] Pursuant to 26 U.S.C. § 529, the parties established an account for each of the girls' educational expenses. The accounts were initially titled in Steve's name for the girls' benefit. At the time of trial, each of the section 529 accounts contained approximately $25,000.

[4] Kimberly had filed this motion on April 12, 2022, and, in addition to requesting a release of funds, she also requested that the accounts be transferred into Kimberly's name so that she could pay the children's current and future educational expenses directly.

[5] At the time this order was entered, Keller was starting her fourth year of college in Oregon and had reached the age of twenty-one in November 2022. Sage and Sierra had completed their senior year of high school and had begun college. Sage was starting her second year of college in Oregon, and Sierra was starting her second year of college in Mississippi. Sage and Sierra became emancipated during the pendency of this appeal in June 2025.

she sought reimbursement. Kimberly responded on November 13, 2023, and argued that the chancellor's order did not require her to provide Steve with "documentation before reimbursement." The court had not resolved these issues before the entry of the final judgment.

¶6. Finally, on December 7, 2023, the chancellor entered his "Findings of Facts, Conclusions of Law and Final Judgment of Divorce" granting Steve a divorce on the ground of uncondoned adultery. The final judgment also settled other issues such as custody, attorney's fees, and contempt, which are not issues on appeal.

¶7. As it relates to issues Steve raised on appeal, the chancellor determined Steve's adjusted gross income was $36,427 per month. The chancellor found that applying the statutory rate of 22%, *see* Miss. Code Ann. § 43-19-101(1) (Rev. 2023), Steve's child support obligation would be $8,013.94 per month. Since Steve was paying the girls' college tuition and expenses, the chancellor found that amount was unreasonable and left the child support obligation at $2,500 per month, as provided in the temporary order.[6] Concerning the girls' education expenses, the final judgment provided:

> The Court has already awarded Kimberly the control and ownership of the 529 accounts.[7] Upon applying the 529 accounts to each girls' college cost and

---

[6] Steve did not appeal the child support award.

[7] Both parties agree that there was no order to that effect prior to the entry of the final judgment. We assume the chancellor is referring to the September 25, 2023 order. Although Kimberly had requested that the accounts be transferred into her name in her April 12, 2022 motion, that order only provided for reimbursement and did not confer ownership of the accounts to Kimberly. However, in the distribution-of-marital-assets portion of the final judgment, the chancellor awarded Kimberly the control and ownership of the section 529 accounts.

4

expenses, Steve will be responsible for tuition, fees, and on-campus room and board up to the amount of $27,000.00 per child, assuming the child is enrolled full time and maintains an overall 2.0 grade point average.

¶8. After the entry of the final judgment, Steve filed a "Motion for Clarification" on December 13, 2023. On December 19, 2023, Kimberly filed "Plaintiff's Response to Defendant's Motion for Clarification & Countermotion to Clarify." Steve filed an "Objection to Countermotion to Clarify" on December 20, 2023. These motions were heard on January 18, 2024. The chancellor announced his ruling from the bench on the date of the hearing, and the written "Order Clarifying Final Judgment of Divorce" was entered on February 8, 2024. Among other things in this order, the chancellor made clear that the section 529 accounts should be transferred into Kimberly's name and that after applying the money in the section 529 accounts, Steve would be responsible for up to $27,000 in college costs and expenses per child, per year. The order further provided that the obligation to pay college expenses would end upon each child attaining the age of twenty-one. Steve did not appeal the final judgment; instead, his notice of appeal is limited to the "Order Clarifying Judgment of Divorce." Steve raises several issues that we will address below.

**ANALYSIS**

**I.     Was it reversible error for the chancellor to enter the "Order Clarifying Judgment of Divorce?"**

¶9. First, Steve contends that the changes the chancellor made to the final judgment were "material" changes and that such substantive changes are not permitted pursuant to Mississippi Rule of Civil Procedure 60(a). Steve notes that the chancellor did not specifically grant or deny either party's motion to clarify. Steve points out that in his bench ruling, the

5

chancellor stated that the court had "inherent power to clarify its judgment if there is confusion." In the written order, the chancellor again referred to the inherent power of the court but also cited the authority provided by Rule 60(a). Steve contends that the changes made by the chancellor in the February 8, 2024 order were material and substantive and not proper under Rule 60(a). However, the chancellor states in the order that "the findings and orders herein are not a reconsideration of the judgment but a clarification of the language, or lack of specific language, of the Final Judgment."

¶10.   Mississippi Rule of Civil Procedure 60(a) provides:

> Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders up until the time the record is transmitted by the clerk of the trial court to the appellate court and the action remains pending therein. Thereafter, such mistakes may be so corrected only with leave of the appellate court.

Concerning the application of Rule 60(a), this Court explained in *Scott v. Scott*, 115 So. 3d 847, 849-50 (¶¶7-9) (Miss. Ct. App. 2012):

> Rule 60(a) does not define "clerical mistakes" or "errors therein arising from oversight or omission." "Rule 60(a) procedure can be utilized only to make the judgment or other document speak the truth." M.R.C.P. 60(a) cmt.

> "Rule 60(a) cannot be used to reflect a change in mind by the judge." *Seymour v. Seymour*, 869 So. 2d 1035, 1036 (¶4) (Miss. Ct. App. 2004). However, it can be used "to correct an order that failed accurately to reflect the judge's original decision." *Id*.

> In *Whitney National Bank v. Smith*, 613 So. 2d 312, 315 (Miss. 1993), the supreme court stated "the power granted in [Rule 60(a)] cannot be utilized to change the effect of a judgment, where the changed effect is not manifest from the record that the change reflects the original intent."

¶11.    We must consider the chancellor's "Order Clarifying Judgment of Divorce" under an abuse of discretion standard of review. *See Mitchell v. Moore*, 237 So. 3d 681, 685 (¶26) (Miss. 2017). Because we find that the changes objected to by Steve on appeal were changes that were "manifest from the record," as will be discussed below, we find the chancellor did not abuse his discretion by his order correcting the final judgment to properly reflect the intent of his original ruling.

**II.    Did the chancellor err in his ruling relative to the section 529 accounts?**

¶12.    Steve contends that the "Order Clarifying Judgment of Divorce" modified the court's "prior equitable distribution of the parties' 529 accounts." It appears that the basis for Steve's contention is the apparent change in language from him being required to "reimburse" Kimberly for the girls' education expenses from the section 529 accounts, to transferring ownership of the section 529 accounts to Kimberly. At this point, this is a distinction without a difference.[8]

¶13.    Steve had been ordered to pay "the children's school on a monthly basis" since the entry of the temporary order on January 30, 2020. While that requirement remained in effect until the entry of the final judgment, the record reflects that Steve stopped making those required payments in 2020 because he did not approve of the schools the girls were attending. In the "Order Granting Second Petition for Citation of Contempt and Motion for

---

[8] Whether Steve reimburses Kimberly for past educational expenses and then transfers ownership of the accounts to Kimberly or simply transfers ownership of the accounts to Kimberly and she reimburses herself, it is clear from the record that the accounts will be emptied by the girls' past high school and college expenses.

7

Release of Funds in Section 529 Educational Accounts," which was entered in September 2023 after the trial was concluded but before the final judgment was entered, the chancellor again affirmed Steve's responsibility to pay for the girls' educational expenses and ordered that he reimburse Kimberly from the section 529 accounts (which were still in his name at that time) for any amounts she had already expended in that regard.

¶14. In the child support section of the final order, as noted above, the chancellor noted that the section 529 accounts had already been awarded to Kimberly. While this statement was in error, later in the final order, the chancellor placed the girls' section 529 accounts in Kimberly's portion of the equitable distribution of marital property. Then, in the February 8 order, the chancellor again ordered that the section 529 accounts be transferred to Kimberly. This was not a change from the final judgment. This order continued the requirement that the section 529 accounts be applied to pay the educational expenses before Steve became responsible for expenses in excess of the funds available in the section 529 accounts. There was no change or error in this regard.

### III. Did the chancellor err by requiring Steve to pay the college educational expenses of his three daughters?

¶15. Steve raises two issues related to the girls' college educational expenses on appeal. First, he contends that the chancellor did not apply the proper legal standard to determine whether the award of college educational expenses was appropriate in this case. In support of his argument, Steve relies on *Capocaccia v. Capocaccia*, 372 So. 3d 1106, 1118 (¶38) (Miss. Ct. App. 2023), where we stated:

> In Mississippi, the duty to send a child to college is not absolute. Rather, it is

> dependent upon the child's aptitude for college, the child's behavior toward and relationship with the parent, and the parent's ability to pay for the education without affecting his customary lifestyle. One or both parents may be ordered to pay part or all of a child's college tuition and related expenses.

(Citations and quotation marks omitted) (quoting *Cossey v. Cossey*, 22 So. 3d 353, 357-58 (¶20) (Miss. Ct. App. 2009)). Steve argues that the chancellor committed reversible error when he did not consider and apply the above factors before ordering Steve to pay the girls' college education expenses.

¶16.   Notably, though, at trial Steve did not challenge the girls' aptitude for college, his relationship with the girls, or his ability to pay. Instead, Steve testified and introduced a trial exhibit that expressed his willingness to pay the girls' "tuition, fees, and on-campus room and board directly to a benefitting minor, unemancipated child's chosen university with his obligation not to exceed $25,752 per child per year." Because Steve did not contest whether an award should be made to cover the girls' college expenses but, instead, expressed a willingness to contribute to the payment of those expenses, we find that Steve waived this argument and cannot raise the issue for the first time on appeal. *See Wiggs v. Boykin*, 392 So. 3d 1262, 1267 (¶23) (Miss. Ct. App. 2024). In any event, the award of college expenses was made in the final judgment, which is not before this Court on appeal.

¶17.   Steve next argues that the chancellor erred by modifying the amount of the award of college expenses in the February 8 order. While the final judgment ordered Steve to pay the girls' college expenses, after applying the section 529 accounts, in an amount up to $27,000 *per child*, the February 8 order increased the award to provide for "up to $27,000 *per child per year*." Steve contends that such a change is outside the authority provided by Mississippi

Rule of Civil Procedure 60.

¶18. As noted above in *Scott*, the chancellor can correct the final judgment to reflect the intent of the original decision. *Scott*, 115 So. 3d at 850 (¶8). The original intent of the chancellor is supported in the record in several ways. First, as noted above, Steve agreed in his trial exhibit that the payment of the college expenses would be "per child per year." Further, in the final judgment, the chancellor noted:

> Applying the statutory rate of 22%, Steve would pay $8,013.94 in monthly child support. Since Steve will be covering the children's college tuition and expenses, this Court finds that $8,013.94 is not reasonable. This Court finds Steve shall be obligated to pay child support of $2,500 per month, beginning on the first day of December 2023, and continuing on the first day of each month thereafter until further order of the court.

This represents a reduction in child support of over $66,000 per year, or a little over $22,000 per child per year, in recognition of Steve's payment of each child's college expenses each year. Accordingly, we find that the chancellor did not abuse his discretion by clarifying the final judgment to properly reflect his true intent.

## CONCLUSION

¶19. Because we find no abuse of discretion occurred, we affirm the chancellor's order clarifying the final judgment of divorce.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND WEDDLE, JJ., CONCUR. LASSITTER ST. PÉ, J., NOT PARTICIPATING.**

10